1840.

Harris
v.
Troup.

----

### Harris *vs.* Troup and others.

Where by the terms of a contract for the sale of land, the purchase money was to be paid in seven yearly payments, with interest annually, and a conveyance was to be given to the vendee or his assignees when the purchase money had been paid, and the vendors reserved to themselves the right to forfeit the contract if the vendee should make default in the payments, and after default had been made in making the payments at the times specified in the contract, the vendors continued to receive parts of the purchase money from time to time ; *Held*, that the vendors, by receiving the payments after default in payment had been made, had so far waived the forfeiture that they could not insist upon it, without giving the purchaser notice to pay the arrears or that they would exercise the right of forfeiture reserved to them by the contract.

A vendor who has waived a forfeiture of a contract for non-payment of the purchase money, by receiving partial payments from the vendee, from time to time, after the days of payment prescribed in the contract, cannot suddenly stop short, and insist upon a forfeiture for the non-payment of the arrears remaining unpaid, without any previous notice of his intention to do so if the arrears are not paid.

Where by the terms of a contract the vendor has the right to forfeit it if the several instalments of purchase money are not paid as they become due, whether the court of chancery will relieve a purchaser who has paid part of the purchase money, but who neglects to pay the residue thereof, after notice from the vendor that he will insist upon his right to the forfeiture if the arrears are not paid without any unreasonable delay, *Quære ?*

This was an application on the part of the defendants, upon bill and answer, to dissolve the injunction which had been issued in this cause. The object of the complainant's bill was to obtain the specific performance of a contract for the sale of a lot of land in the county of Allegany, and to restrain the defendants from selling the lot or ejecting the complainant therefrom. The lot originally belonged to R. R. Troup and C. G. Troup, now deceased, and to the defendants Louisa Troup and Charlotte the wife of J.

July 21.

1840.

Harris
v.
Troup.

L. Brinckerhoff; the share of Mrs. Brinckerhoff being vested in trustees for her separate use. On the 15th of May, 1833, the several parties interested in the lot entered into a written contract with Charles Hopkins, to sell the same to him for the sum of $569,35 ; to be paid in seven equal annual instalments, with lawful interest from the 14th of January, 1832, the interest on the whole sum remaining unpaid from time to time to be paid annually. And a conveyance with warranty was to be given to the purchaser, or his assignee, upon payment of the purchase money. The contract, among other things, contained the following clause :

" This contract is upon the express condition that the party of the second part or his assigns, shall remove to and actually settle on the said land within the term of six months from the date hereof, and being so settled shall permanently reside thereon and forthwith proceed to clear and improve the same, and the said improvements shall be increased by clearing and putting under a good fence, yearly and every year, five acres of the said land, in addition to former clearings and improvements. And in default of the said party of the second part, or the said assignee in making payments, and actually settling on and improving and clearing and keeping improved and cleared the said land, in manner aforesaid, then and in such case this contract shall and may be forfeited by the parties of the first part, and thereupon the same shall become utterly null and void ; excepting always that this contract, notwithstanding such forfeiture and so becoming null and void, shall continue to be so far valid and in force, in law and equity, as to entitle the parties of the first part to demand and receive of the party of the second part, or the said assignee, the sum of $250 as liquidated damages, and not in the way of penalty, for the injury sustained by the parties of the first part in making the said sale, and by the failure of the party of the second part or the said assignee to settle on, clear and improve such land in manner aforesaid. And in case of the forfeiture by the parties of the

first part as aforesaid, then and in such case they shall be at liberty to sell the said land to any other person or persons whomsoever, without being liable in law or equity to the party of the second part, or any person claiming under him, for any damages therefor, or for any payments previously made on account of this contract."

Hopkins, at the time of making of the contract, paid $50 towards the purchase money mentioned therein ; which by agreement of the parties was to be considered as paid in February, 1832. And $15 was afterwards allowed to him on the contract in consequence of having been kept out of the possession of a part of the premises for some time after the making of the contract. He also paid $60, in June, 1835, which was received from him in part payment of the purchase money and interest which had then become due. And in March, 1836, Hopkins assigned his interest in the contract to the complainant, with the assent of the other parties to such contract ; and they at the same time received from such assignee $200 towards the principal and interest which was then due on account of the purchase money mentioned therein. R. R. Troup and C. G. Troup died after the making of the contract. And, in June, 1839, the complainant offered to pay to the defendant J. L. Brinckerhoff, who was also the attorney of the defendant Louisa Troup, the balance of the purchase money due upon the contract. But he refused to receive it ; claiming the right to a forfeiture of the contract because the payments had not been previously made.

*John Dixon*, for the complainant.

*M. S. Bidwell*, for the defendants.

THE CHANCELLOR. The defendants appear to have proceeded upon the supposition that the annual payments upon this contract were to commence from January, 1832, so that the last payment would become due in 1839. Such, however, does not appear to be the true construction of

the instrument upon its face. It was made in May, 1833, and the principal was made payable in seven annual instalments, without specifying when the first payment was to be made. The natural construction of it therefore is, that the purchase money and interest was to be paid in seven annual instalments from the date of the instrument, with interest to be computed from the 14th of January, 1832. If the latter date was referred to as the time from which the yearly payments were to commence, the first instalment would, by the terms of the agreement, have been due and payable several months before the contract was made. The price of the land and the terms of payment may have been agreed upon verbally as early as January, 1832, and the contract reduced to writing subsequently. But, if such was the fact, the parties have not drawn up a contract which can refer the times of payment of the several instalments to seven yearly payments from the 14th of January, 1832 ; as the reference to that time, in the written agreement, only relates to the time from which the interest is to be computed. Indeed, any other construction would have authorized the vendors to declare the contract forfeited immediately after its execution, and to recover the $250 agreed upon as stipulated damages ; if the defendants are right in their understanding of the legal effect of the fourth clause or article of the agreement.

Although the whole amount of the purchase money had not become due in June, 1839, still there has been a default in the payment of some of the instalments, and of the annual interest, which were unquestionably due. The question therefore arises, whether upon this agreement, and considering the practical construction which the vendors had given to the same by receiving the instalments long after they had become due and payable, it was just and equitable for the defendants to insist upon an absolute forfeiture of the agreement, and of all the moneys paid thereon ; without giving any previous notice to the complainant that they intended to insist upon such a right if the arrears of

principal and interest were not paid without any unreasonable delay. How far a court of equity is bound to relieve the purchaser, in such a contract, who neglects to perform his part of the agreement after he has had reasonable notice from the vendors that they will insist upon their legal rights if the purchase money is not paid according to the terms of the agreement, it is not necessary now to consider. But it was certainly inequitable in this case, after the vendors had waived the forfeiture, from time to time, by receiving portions of the purchase money long after the same was due and payable, to suddenly stop short and insist upon a forfeiture, without any previous intimation that they intended to do so.

It appears, however, from the answer of the defendants, which in this respect is responsive to the bill, that the mother of two of the vendors, who have died since the making of the contract, has a life interest in their respective portions of the lot in question. She is therefore a necessary party to a bill for a specific performance of the contract, as she must join in the conveyance in order to give a good title to the purchaser. The personal representatives of the decedents are also proper parties, as the unpaid purchase money for their shares is, in equity, considered as personal property. The defendants will therefore be entitled to a dissolution of the injunction unless the proper parties are all brought before the court, by an amendment of the bill, without any unreasonable delay. The motion is denied for the present; but with liberty to the defendants to renew the application if the proper parties are not brought before the court, by a motion for leave to amend the bill and by an actual amendment thereof in this respect, as soon as practicable. The costs of both parties on this motion to abide the event of the suit.