## EDGERTON vs. PECKHAM.

Where the owner of a lot of land made a written agreement to sell the same, for $300, one third to be paid down and the residue in one and two years, with interest, and possession was to be delivered immediately; and the agreement contained a provision that if the purchaser should make default in either of the payments, the vendor should be discharged from the agreement, and that the purchaser should forfeit all the previous payments, and should deliver up the peaceable possession of the premises; and the vendee took possession of the premises and made valuable improvements thereon, and paid the first two instalments of the purchase money at the times specified in the contract; and then assigned his contract to the complainant, who took possession of the premises, but did not make the last payment at the day specified in the agreement; nor was he called on for payment nor offered a conveyance upon payment of the money; but a few days afterwards he tendered the money and demanded a conveyance, which the vendor refused to give, and insisted upon the forfeiture; *Held*, that time was not of the essence of the contract, and that the complainant was entitled to a specific performance.

THIS was an appeal, by the defendant, from a decree of the vice chancellor of the fifth circuit, decreeing the specific performance of a contract. On the 3d of November, 1835, the defendant entered into a written contract with J. A. Strobeck, to sell and convey to him the premises in question, upon payment of $100 at the date of the agreement, $100 and interest in one year, and $100 with interest in two years; which sums Strobeck agreed to pay. And by the agreement Strobeck was to take the immediate possession of the premises. The agreement then contained the following clause: " In case the said Strobeck shall make default in either of the payments above mentioned, then the said Peckham is to be discharged from this agreement to sell and convey to the said Strobeck; and the said Strobeck is to forfeit to the said Peckham all the previous payments, and give peaceable possession of the same above mentioned lot." Strobeck went into possession of the premises, under the agreement, and made the two first payments at the times specified in the contract; and he made some considerable expenditures and improvements upon the premises. On the 10th of April, 1837, Strobeck, for a valuable consideration, assigned all his interest in the contract to S. P. Edgerton, the complainant; who immediately

Edgerton *v.* Peckham.

went into possession of the premises, and made other improvements thereon, of which assignment the defendant had notice. On the day upon which the last payment became due the same was not paid ; nor did the defendant ask for payment, or offer to convey the premises upon receiving such last payment. The neglect of the complainant to pay on the day specified in the contract was, as he alleged in his bill, in consequence of his misapprehension of the time at which it was payable. On the 16th of November, S. Parkhurst, at the request of the complainant, called upon the defendant in relation to this payment ; who said he supposed, if he had the money offered to him, he should take it. And three or four days afterwards Parkhurst, as the agent of the complainant, called upon the defendant and tendered the money due upon the contract ; but the defendant then said he had money enough, and did not want it, and that he should not take it.

The following opinion was delivered by the vice chancellor :

GRIDLEY, V. C.　This case presents upon the facts, and by the concession of the counsel, the naked question, whether in a case where the agreement was clear, certain, fair and mutual, when possession was taken under it and valuable improvements made upon the premises, and large payments made upon the contract, (in this case two-thirds of the purchase price,) and a long occupation of the premises enjoyed by the purchaser, and where no change has occurred in the circumstances of the premises, the omission to pay an instalment by the exact day prescribed therefor, will work a forfeiture of the contract and of previous payments, at equity as well as at law ; and will enable the vendor to repossess himself of the premises, by an enforcement of a literal construction of the provisions relating to the forfeiture. It is undeniably true, and the books are full of authorities to prove the proposition, that in ordinary cases time is not of the essence of the contract ; and that a mere default of payment at the day agreed on, will not, in such cases, without some change in the circumstances of the property or of the parties, occasioned by such delay, authorize a court of chancery to deny a specific performance.

But it is equally clear that there is a class of cases where time is of the essence of the contract; and where a disregard of the conditions of the contract will deprive a party of relief, both at law and in equity.

1st. Time may *have become* of the essence of the contract by the *rise* or depreciation of the value of the premises contracted to be sold. And, therefore, one who has given evidence of the abandonment of the contract, by lying by to see whether it will or will not be a bargain to take the property, will not be relieved; though he may have paid some portion of the purchase money. And gross negligence is evidence of an abandonment which will be a bar to a bill for relief. This doctrine is advanced in and supported by a great variety of cases. (13 *Ves.* 244; 5 *Id.* 818, 720, *S. C.* 4 *Id.* 667. 4 *John.* 494. 3 *John. Ch.* 370.)

2d. Time may be of the essence of the contract, by reason of the nature of the interest in the property which is to be conveyed. Contracts for the purchase of stock are of this description; and the reason assigned is, that the daily fluctuations in the price would render a *punctual performance* of the essence of the contract. (*See* 4 *Ves.* 492; 1 *Sim. & Stew.* 59.) So also in the case of the sale of a reversionary interest, where the vendor may be supposed to be in want of the consideration money, and to whom it is of importance that the money should be paid punctually. (*McChum* v. *Rogers,* 4 *Bro. C. C.* 391. *Osmond* v. *Anderson,* 2 *Ball & Beat.* 370.) So where there is an agreement to sell at a valuation to be made within a certain time, by persons who are named. (6 *Mad.* 26.) So also in a sale of a lease depending on lives, (*Osmond* v. *Anderson, Ball & Beat.* 370.) There a distinction is taken between such a case and a case of purchase, where time is said to be not of the essence of the contract; as a compensation for the delay may be paid in the interest, &c.

3d. Time may be of the essence of the contract when there is an express stipulation to that effect, and where the contract is executory at the time of the default; no part or no considerable part of the purchase money having been paid. And this is on a very plain principle, to wit: that the performance, by the vendee, is a condition precedent to the performance of the contract

Edgerton v. Peckham.

by the vendor. It is believed that most of the modern cases which have been supposed to establish the rule that a mere naked default will *ipso facto* work a forfeiture, not relievable in equity, will be found to fall within this class of cases or the one last above mentioned. Such was the case of *Mills* v. *Smith*, (2 *Edw. Ch. Rep.* 78.) There no part of the consideration money had been paid, though some money had been expended on the premises. I cannot forbear remarking on this case, however, highly as I respect the opinion of the vice chancellor of the first circuit, that I consider it as adopting an exceedingly severe rule; and a case which upon the facts disclosed entitled the complainant to relief. I have examined all the authorities cited on the argument, which were supposed to deprive the party vendee of relief in the case of a *naked default merely*, and I do not find any of them to establish the principle in a case parallel to the one at bar. None of them are cases of the purchase of premises accompanied with a long enjoyment, and the expenditure of moneys on them, and the payment of two-thirds of the purchase money. In the case in 3 *Merivale*, 84, the possessor being a devisee in trust, put up the premises at auction in May, and the defendant became the purchaser on certain terms; one of which terms was to pay part of the money by way of deposit, at the sale, and to sign an agreement to pay the residue on the 20th day of June following, on having a deed, &c. On the delivery of the abstract several objections were taken to the title ; and due notice was given in writing, to the complainant's solicitor, that the defendant considered the contract at an end, and that he claimed the deposit. That claim being refused, an action was brought to recover it ; and a bill filed by the complainant, for a specific performance. And upon that state of facts, the lord chancellor held time of the essence of the contract. It is to be remarked, however, in support of the distinction between such a case and a case of part performance, that Sugden, of counsel for the defendants, while contending that time was of the essence of the contract, yields the point, that when *steps have been taken by the vendee and the contract is partly per-*

*formed, the rule is otherwise,* unless there has been great negligence or unreasonable delay.

In the case in 3 *Mad.* 440 to 447, there was a memorandum of an agreement for a lease, made 24th of March, 1818, for a term of thirty-five years, at a certain rent; with a proviso to consider the lease void on a failure to pay as agreed. And as a consideration for granting the lease, Hudson agreed to pay Waterman £900; £100 to be paid *down,* and £400 by a three months acceptance : with a condition that the lease should be executed in six months, if the whole £900 should be paid. But it was agreed further, that if the same should *not* be thus paid, that the agreement should be void, possession redelivered on the 30th of September, and that Hudson should pay £500 as liquidated damages, and £150 as compensation for rent, &c. for the time, &c. to be retained out of the moneys that should have been paid. The party went into possession of the premises, paid the £100 down, and afterwards £400 in addition, but did not pay the whole £900 at the time agreed; but there had been a subsequent receipt of rents. And it was *held,* that this was a case, originally, where time was of the essence of the contract, but that it had been waived by the conduct of the party. But to show how far this case falls short of establishing the principle, that money paid in part performance of a contract for the purchase of lands, is forfeited in equity, the vice chancellor proceeds to say, that if the party had intended to insist upon the stipulation, in the contract, putting an end to it, he should have demanded it on the 30th of September, and should not have received the £58 rent; but should have regarded himself *a debtor to the other contracting party, to the amount of £350, being the balance of £500 paid after deducting the £150, which was the sum agreed on as a compensation for rent, &c.*

The case in 6 *Mad.* 26, was one where the time of valuation was material. The case of *Williams* v. *Edwards,* (2 *Sim. & Stew.* 78,) was one where one of the terms of the agreement was, that the contract should be void, unless the purchasers' counsel should be of opinion that a marketable title could be made by a certain time.

The cases in 3 *Atkins,* 336, and 2 *Bro. C. C.* 431, were cases where legacies were given upon the performance of certain conditions; which conditions were never performed. ]

There are other cases which establish a similar doctrine, but I have not found any cases which, when fairly examined, did not fall within one or the other of the two last mentioned classes of cases, being distinguished from the case at bar by the absence of any proof of long enjoyment of the premises, payment of most of the purchase money, and expensive improvements made. And I have found no case where these features did exist in which it was held that the contract was forfeited, in equity, unless there had been such delay as to be evidence of abandonment, or at least, to have in some degree affected the circumstances of the parties, or the property in question. [The case of *Lynch* v. *Benedict,* (1 *John. Ch. Rep.* 370,) relied on by the defendant's counsel, was a case of the grossest neglect, and of a clear abandonment of the contract; there was a sale of the premises to a third person, with the consent of the complainant. Nor do I understand the late chancellor, though his language is strong, as laying down, in his review and summing up of the cases, any such rule as is insisted on in this case. ]

The proposition which is maintained by the defendant's counsel, is a bold and startling one. If that proposition be the law of the court of equity, then a purchaser and holder of lands, under such a contract as this, may have paid, upon purchasing a farm, $1000 annually, for many years, may have expended thousands of dollars in improvements, may be in truth one of the wealthiest farmers and land-holders in the country, and may, from forgetfulness, or some other accidental cause, (which of course is not susceptible of other proof than his own assertion,) omit to pay the last instalment of $1000, by the exact hour prescribed by the contract; and although he may be ready with the money, an hour after the default, and offer it to his inexorable creditor, yet he may be doomed to see the whole of his estate, the reward of years of toil and industry, swept from him in a moment, by this unyielding rule of law; and may invoke in vain the benign powers of the court of chancery for his relief. This con-

sideration gains strength immeasurably, when it is remembered
that a large portion of the land contracts in the western section
of this state, are framed with a provision similar to the one in
the contract in this case; which clothes the holders of such con-
tracts with power, (if the alleged construction of this contract be
the true one,) to insist upon the forfeiture of every farm in that
prosperous and wealthy region of the country, upon the unex-
plained failure to pay merely a single dollar, upon the contract, at
the exact time prescribed therein. It seems to me, that this is
too monstrous a proposition to be maintained in the nineteenth
century. For while the application of this rule to the case of a
contract which is not executed, by the payment of any part of
the purchase money, is strictly just and proper, it is clear that
to apply it to cases such as I have supposed, or to the very case
at bar, would work the greatest injustice; and would require the
court of chancery to be the organ and instrument of every Shy-
lock, who chose to insist upon the rigorous exaction of his pound
of flesh.

It is said, that it is not the province of the court of chancery,
any more than of a court of law, to make contracts for parties, but
to enforce them. This is true, as a *general proposition*. But
it is also true, that the court of chancery looks to the *substance
of a contract;* and when the substance of a contract is fulfilled,
and the *general* intention of the parties carried into effect, the
court relieves against any forfeiture or penalty, inserted for the
purpose of enforcing the contract. (*See Jeremy on Eq. Juris.*
470; *Fonbl. Eq.* 130, 4*th Am. ed.*) It was upon this princi-
ple, that upon the forfeiture of the penalty of a penal bond, the
court of chancery was accustomed to relieve against the penalty,
upon the payment of the sum really due, and the interest thereon,
before the statute had rendered a recourse to a court of equity
necessary.

In England it is laid down, in all the elementary books and
cases, that a specific performance will be decreed, notwithstanding
a bare default, except in the classes of causes, which I have noted
above. *Newland on Contracts,* 238 *to* 240, contains a strong
authority on the very point in question. He says, "It is mate-

rial to observe that, even though a clause be introduced into the agreement, declaring it to be void if the stipulation as to time be not complied with, still equity will not consider the performance at the day an essential part of the contract." And he cites two cases directly in point. Upon the hearing of the last of these causes, before Lord Thurlow, after the decision of the main question, Mansfield, for the defendant, said, " If this be the doctrine of the court, it will be necessary in future agreements to insert a clause, that notwithstanding the decision of the court of chancery to the contrary, it is the. meaning and intention of the parties that the contract shall be void, if the conveyance be not made at a certain day." Lord Thurlow is reported to have replied—" Such a clause may be inserted, and the parties will then be just as far forward as they are now."

Although Lord Eldon did not carry out Lord Thurlow's doctrine on this subject in its full extent, as to the materiality of time in a contract *under all circumstances*, yet he coincided in his doctrine in cases where payment had been made upon the contract. And in *Seton* v. *Slade*, (7 *Vesey*, 27 *to* 34,) he discusses the subject of regarding time as of the essence of the contract, in chancery as at law, with great force. He says that it is impossible to regard time in *this* court as at law ; and he mentions the case of a mortgage as somewhat analogous. He then proceeds as follows : " But there is another circumstance—the effect of a contract for purchase is very different at law and in equity ; at law the estate remains the estate of the vendor, and the money that of the vendee. It is not so here ; the estate is the real estate of the vendee ; it descends to his heirs ; it is devisable by his will ; therefore I do not take a full view of the subject, upon the question of time, unless that is taken into consideration." Again, in *Radcliffe* v. *Warrington*, (12 *Vesey*, 320,) there was a provision in the contract, " that if the party should neglect or fail to comply with the condition, (which respected a certain time,) the deposit should be forfeited." Yet the lord chancellor held that the court would, in its discretion, relieve against the lapse of time, upon the circumstances of the case.

I have already in reference to the case in *Maddock's Reports*,

Edgerton *v.* Peckham.

mentioned the distinction conceded by Sugden, *arguendo,* between the case of a contract wholly executory, and one where steps had been taken and money paid under it, in regard to relief against the lapse of time. Other authorities also, in the English court, take the same ground. (*See* 4 *Vesey,* 689, *note b. citing* 4 *Bro. C. C.* 469.) In this case the lord chancellor was deciding a case where no steps had been taken by the parties, and where he held the lapse of time a bar; but it will clearly be seen that he concedes the rule to be different when steps had been taken and money paid : he says, "In most of the cases there have been steps taken. Is there any case in which, without any previous communication between the parties, the time has been suffered to elapse? It wants a case to prove that when *nothing has been done by the parties* this court will hold, in a contract of buying and selling, a rule that certainly is not the rule of law—that time is no essential part of the contract. Here *no step* has been taken, from the day of the sale, for six months after the time when the contract was to be completed."

The American cases it is believed follow the English doctrine of holding time *non-essential,* in a case of an agreement of purchase, when the purchase price is partly paid ; unless there have been such laches as amounts to evidence of abandonment, or such as has caused the lands to fluctuate in value, or has in some way put the party, to whom the performance was to be made, in a worse condition, by the delay.

In the supreme court of the United States, *Brashier* v. *Grats,* (6 *Wheat.* 528,) and *Bank of Columbia* v. *Hayner,* (5 *Cranch,* 262, *and* 1 *Peters,* 464,) are strong cases on this point. Other cases will be found in 3 *Bibb,* 366, 2 *Id.* 566, 1 *Marsh.* 423. In the courts of this state, some cases have been decided which hold a doctrine hostile to the rule contended for by the defendant's counsel. In *Walters* v. *Travis,* (9 *John. R.* 450,) the court of errors ordered a specific performance after a default of 12 years. The language of Spencer, J., in this case, puts the principle on its true ground. *Woodcock* v. *Bennett,* (1 *Cowen,* 728 *to* 733,) and *Seymour* v. *Delancey,* (3 *Id.* 445,) adopt the same rule.

Edgerton v. Peckham.

The present chancellor, (5 *Paige*, 241,) by holding it sufficient for the vendor to give a good title at the time of the decree, seems to have adopted the same rule, as to time; and also, in the case of *Holden* v. *Gilbert*, decided on the 21st of August last, so far as I can understand the brief notice of the case as reported in the Saratoga Sentinel, he must have held that time was not of the essence of the contract, in a case where it was intended by the parties to have been so. In that case, the mortgage contained a provision, which, by its terms, entitled the mortgagee to consider the whole of the money secured by the instrument, as payable on the failure to pay certain interest moneys, for the space of thirty days after said interest should fall due, although the moneys would not have fallen due in four years. In that case, the chancellor is reported to have held, as was held by Lord Eldon, in the case put by him in 7 *Vesey*, 27, that the complainant could not insist upon the forfeiture in this court; but that the provision referred to would be available to him only upon a foreclosure at law, by advertisement under the statute. This seems to affirm the principle that a mere default as to time, and *nothing else*, will not, in this court, be held to work a forfeiture, though such will be the effect at law. This is undeniably in accordance with the elementary doctrine of the court of chancery, that it is an original ground of the jurisdiction of this court to relieve against penalties and forfeitures; regarding them as a means only of enforcing the main contract, and dispensing with them when that contract can be substantially carried into effect without any injury to the party for whose security the forfeiture was provided, except such injury as may be compensated by the interest on the money due. It is, moreover, consonant to the great principles of justice, which would be outraged if, in the case at bar, the defendant could be allowed to wrest from the hands of the complainant the premises he has long enjoyed, and greatly improved, and almost entirely paid for, by reason of the mere default of a day, confessedly working no injury to the defendant. My opinion is, that jurisdiction was given to the court of chancery for the express object, among others, of relieving against such cases of hardship, on the part of cruel and

Edgerton *v.* Peckham.

unprincipled creditors. My conclusion, therefore, is that the complainant is entitled to relief, by having the contract in question specifically performed.

[The only other question in the case relates to costs; and I am referred to the case of *Dumond* v. *Sharts*, (2 *Paige*, 182,) as an authority for giving costs. That would seem to be an authority in point; and so the counsel of the defendant conceded the rule to be, in the event that the law should be found to be against the defendant, on the merits of the case.

*T. Jenkins,* for the appellant. The testimony of Stephen Parkhurst, with respect to extending the time for the payment of the money by the complainant to the defendant, can have no effect upon this case; because no such fact is charged in the bill, and the proof is, therefore, not pertinent to the issue. The conversation of the defendant, with Parkhurst, did not amount to any valid agreement, even if it had taken place before breach, and had been in relation to a contract capable of being varied by parol. But the time of payment, especially after forfeiture, could not be extended by parol. If it could be done by parol after breach, it should have been upon some good consideration. The excuse set forth in the bill, that the payment was not made on the day specified in the contract, owing to a misapprehension of the complainant as to the day of payment, is denied in the answer, and contradicted by the proof. It was the complainant's duty to have paid, or offered to pay, the money at the day, and to have demanded the deed. In this case, time is of the essence of the contract, and the non-payment of the money at the day, by the complainant, rendered the agreement void.

*C. P. Kirkland,* for the respondent. The plaintiff, by tendering the money and demanding a deed, and by calling again to receive it, became entitled to his deed, and is now entitled to a decree of specific performance. Time merely, and separate entirely from every other consideration, is not, in equity, material, in cases of agreements of this sort. This results from the

nature of the contract. The vendee, in equity, becomes the owner equitably of the fee, and the vendor holds the contract as a quasi mortgage for the purchase money; and in reference merely to the times of payment, it is on the footing of a mortgage. At any rate, to render mere time material, the vendor must make a demand of the vendee, and the vendee must neglect, delay, or refuse payment. More emphatically is all this so, when there has been an essential part performance. The true rule, we apprehend, is that the bare omission to pay at the exact day has no manner of effect on the vendee's equitable rights, when there has been no change of circumstances—no alteration in any way of the estate—no trifling with, or misleading of, the vendor—no demand by him on the vendee; where, too, there has been a part performance, and where the vendee within a very few days after the day, and before any act or step has been done or taken on the part of the vendor, actually tenders and offers the money. Even if, by the words of the contract in this case, time was material, the defendant expressly waived it. After saying, on the 16th of November, that he would take the money, and after it had been duly tendered and a deed demanded on the 20th, and after the plaintiff had presented himself again on the 22d, to receive it, it was grossly inequitable in the defendant to bring the ejectment suit, particularly as he did not, at the time of the tender, place his refusal on the ground of forfeiture. Under these circumstances, the defendant having compelled the plaintiff to come into this court, for self preservation, is clearly liable to the costs of this suit; more especially as he avowed his object to be to make up out of this innocent plaintiff what he had lost by the cheats of others.

THE CHANCELLOR. As a general rule, time is not of the essence of a contract for the payment of money, upon an agreement for the sale and conveyance of real estate. And I can see nothing in the circumstances of this case to justify the court in excepting it from the general rule. The contract, it is true, contains a general provision, that if default shall be made in either of the payments Strobeck shall forfeit all the previous

payments, and give up the possession of the premises.  This, however, is but the legal effect of the contract without such a provision.  For if no such provision had been contained in the agreement, the defendant might have brought an action of eject-ment to recover the possession of the premises; which eject-ment suit this court would not have restrained, except upon the terms of paying the balance of the purchase money and the costs of suit.  Nor could the payments already made, pursuant to the terms of the contract, have been recovered back, if the vendee had refused to complete his purchase; even if this clause of forfeiture had not been inserted in the contract.  The ques-tion here presented, then, is, whether this clause was intended, by the parties, to deprive the purchaser of all legal and equitable right to the premises, or to the previous payments, if for any cause the last payment should not be made at the precise mo-ment when it became due and payable; and if so, whether it is not the duty of this court to relieve against such a forfeiture.

The case of *Wells* v. *Smith*, (7 *Paige's Rep.* 22,) was en-tirely different from this.  There, the performance of the con-dition precedent, on or before the particular day specified, was essential to the vendor's security.  The deed of the lot was to be delivered on a particular day, and the purchase money was to be secured by a bond and mortgage upon the premises; and to render the security perfectly safe, the purchaser was to build a house of particular dimensions upon the premises before that time, or pay $1000 of the purchase money on that day, at his election.  But he did neither; and by the express terms of the agreement, the vendor was not to give the deed, and take the bond and mortgage on the premises, in that event.  In that case, too, the purchaser had only paid for the use of the property; so that there was in fact no forfeiture except the loss of a profita-ble speculation, which the purchaser failed to obtain the benefit of by his non-performance of a condition precedent to the vesting of the title of the property in him.

The vice chancellor, in his opinion, has carefully reviewed most of the cases on this subject, both in this country and in England.  It will therefore be useless for me again to travel

over the same ground in giving my opinion in this case. It is sufficient to say that I concur in the conclusion at which he arrived, that this is not a case in which the vendor was entitled to insist upon a forfeiture of the contract ; and to retain the premises, with the improvements made thereon, as well as the two thirds of the purchase money which he had received upon the contract. And that the complainant was entitled to a specific performance.

The decree appealed from is therefore affirmed, with costs.