### BARNEY *vs.* LOPER.

S. and L. entered into an agreement in writing, by which S. sold to L a lot of land, and L. agreed to pay therefor $100, in installments; on the payment of which sum, S. agreed to execute a deed of the lot. In case of L.'s failure to pay, S. reserved the right to re-enter and take possession. After all the payments had been due between one and two years, L. requested further time, until the first of June, and agreed that if he did not pay by that time he would quit the premises. Payment was not made on that day, and on the 1st of September, thereafter, S. gave L. notice to quit, and informed him that he should sell the premises. *Held* that S. had a right to rescind the contract and to put an end to all the rights of L. under it; and that after he had done so, a tender from L. came too late, he having then no interest in the premises.

THIS action was brought to recover the possession of land. The action being at issue, was referred to Chauncey Tucker, Esq. sole referee, and was tried and submitted to the referee on the 20th December, 1852. On the trial the plaintiff offered as a witness, *Peter A. Smith.* This witness was objected to by the defendant's counsel on the ground that he was interested, and that this action was prosecuted by the witness, or for his immediate benefit, and on the ground that he was otherwise incompetent. Objections—no proof being offered to sustain them—were overruled by referee, to which decision the defendant's counsel excepted, and the witness was then sworn and testified: "I know the parties to this action." Witness was here handed a contract in the words and figures following, viz: "Article of agreement made and entered into this 13th day of September, A. D. 1847, between Peter A. Smith, of the city of Rochester, of the first part, and Simon Loper, of the village of Charlotte, of the second part; to wit: The party of the first part hereby sells to the party of the second part, village lot No. 24, situated in the village of Charlotte, county of Monroe, &c. in the third division, township No. 2, short range—said to contain four acres of land, for which the party of the second part agrees to pay the party of the first part, one hundred dollars, as follows, viz: Twenty dollars down, the receipt of which is hereby acknowledged; forty dollars on the 13th day of Septem-

Barney *v.* Loper.

ber, 1848; and forty dollars on the 13th day of September, 1849, with interest on each payment as it becomes due. Upon the payment of the money as aforesaid, the party of the first part agrees to execute to the party of the second part his warrantee deed for the lot as aforesaid. In case of the failure of the payments, or either of them as aforesaid, the party of the first part may re-enter and take possession of said lot.

SIMON LOPER.     [L. S.]<br>PETER A. SMITH. [L. S.]"

The witness testified, " I know the handwriting of defendant; the signature to this contract is his ; the other signature to it is mine." This paper was then read in evidence. The witness further testified that the defendant went into possession of the land under the contract at the time of its date, and had continued in possession ever since, and was now in possession of the same ; witness was previously in possession ; that the defendant paid him the $20 for the first payment, and $20 at one other time, and $25 at another time ; last payment was in November, 1849. The plaintiff then offered to prove a parol notice of a rescission of the contract, by reason of default on the part of defendant, and demand of possession, by witness. This was objected to by defendant's counsel, on the ground that parol notice was incompetent, insufficient and inadmissible, and also on the ground that the witness was incompetent to prove that fact ; which objections were overruled by referee and the defendant's counsel excepted. And witness proceeded, " during the year 1850, I repeatedly spoke to the defendant about clearing this matter up. I was taken sick in the fall of 1850. In the fore part of January, 1851, he came to see me. He wanted to know of me if I was going to drive him off the land, because the contract was out. I told him if he would then pay me according to contract, I would take it, notwithstanding it was out; he said he had not the money to pay then, but if I would give him to 1st April, he would then pay or quit the premises without saying a word. I then said to him, be sure that you can do it at that time, and if you can't do it at that time, take further time. I want this matter ended. He then says, give me to the 1st June, and I

will be certain to do it, and if I don't, I will then quit without finding any fault. The 1st of June came and he did not come or do any thing about it. About 1st September, 1851, I met defendant and told him he must leave the premises. I made no further request; defendant said I must not be hard with him, as soon as he got money, he was coming to see me. I told him I should sell the premises, and he must leave." The plaintiff's counsel then offered in evidence two deeds from Smith and wife to the plaintiff, of the land described in the contract, dated the 23d February, 1852, and acknowledged on the 4th March, 1852; the one purporting to convey three and one-tenth acres of land, contained the usual covenant of warranty by the grantors, as to possession and title, in consideration of $150 therein expressed. The defendant's counsel objected to the deeds as evidence of title in the plaintiff, that the same were irrelevant and incompetent to prove the plaintiff's title, and that the same were void as against the defendant, which objections were overruled, and defendant's counsel excepted.

The defendant's counsel moved for a nonsuit, which was denied. He then proved a tender by the defendant, to Smith, of the amount due upon the contract, in February, 1852. The referee reported that the plaintiff was entitled to judgment for the recovery of the premises, with costs. And from the judgment entered upon the report, the defendant appealed.

*Daniel Wood*, for the appellant.

*F. L. Durand*, for the respondent.

*By the Court*, JOHNSON, J. The only question in this case is whether Smith the vendor was in a situation to forfeit the contract and put an end to all the defendant's rights under it, and had done so, before conveying to the plaintiff. By the terms of the contract, the defendant was bound to pay at certain specified times, but Smith the vendor had permitted the times of payment to pass without objection or notice, and had received payments after the times stipulated had elapsed, so that when

Barney *v.* Loper.

the day for the last payment had passed, time was no longer of the essence of the contract and the vendor could not put an end to it without notice to the vendee, and giving him a reasonable time thereafter in which to make payment. The vendor may, however, after reasonable notice and non-payment rescind, the same as though there had been no previous waiver. (*Harris* v. *Troup*, 8 *Paige*, 423.)

It appears from the evidence, that after all the payments had been due between one and two years, and the vendee had been repeatedly solicited by the vendor to make his payments, the latter offered that if he, the vendee, would still make the payments he should have the land. Whereupon the vendee requested further time, and proposed the 1st of April, 1851. The vendor acceded to it, and told him to be sure that he could do it at the time, and if he was not sure he could pay it at that time, to set some further time, as he wanted the matter ended. The vendee thereupon agreed that if he did not pay by the first of June thereafter, he would quit without finding any fault. This it would seem was agreed to by the vendor. Payment was not made on that day, and nothing further was done until about the 1st of September, when the vendor met the vendee and gave him notice to quit and that he should sell the premises.

I think it is clear that the vendor was then in a situation to rescind. His conduct had been reasonable and fair and indeed quite indulgent. The vendee chose his own time and made his own terms, and it was his own fault that he did not comply. His tender came too late. He had then no interest in the premises, to save or redeem by tender or offer of payment. He was in no better situation than he would have been had no contract ever existed between them. The decision of the referee was correct, and the judgment of the special term must be affirmed.

[MONROE GENERAL TERM, December 5, 1853. *Welles, Johnson* and *T. R. Strong*, Justices.]