## PETER CYTHE *vs.* ABRAM LA FONTAIN, impleaded with Francis Valley.

In an action of ejectment, brought by a vendor, or his grantee, to recover lands in the possession of the defendant under an executory contract of sale, for default in the payment of one of the installments at the time fixed upon by the contract; *held* that the defendant might interpose an equitable defense, and the court would consider the case in the same view as though the defendant had commenced a cross action and applied for an injunction.

The decision of such a question consists of a single conclusion of law, and a general exception is sufficient.

When the grounds of defense may be clearly understood by the answer, and the parties go to trial and actually try the very question on which their rights depend, objections to the answer on account of a defective statement of facts will be disregarded on appeal.

Where the plaintiff had taken a conveyance of the lands, and an assignment of the contract, with notice of the purchaser's equity; *Held* that he was in no better position to enforce a forfeiture than his assignor.

When the time of payment has been extended with the assent of the vendor, and no certain time fixed when payment will be required, the vendor cannot afterwards forfeit the contract by requiring immediate payment, but the vendee is entitled to a reasonable time after notice, to make his payment.

*It seems* that the vendor may deprive himself of the right to exact a forfeiture by afterwards refusing payment upon another and untenable ground.

An action of ejectment by the vendor to recover possession for default in payment of the purchase money, being a legal action, as defined by the Code, the defendant, if he succeeds, is entitled to costs, although in an equitable action for the same relief he might be charged with costs.

APPEAL from a judgment rendered upon the decision of the court at circuit, upon a trial by the court without a jury.

The action was ejectment to recover the possession of certain premises in possession of the defendant under a contract of purchase, upon the allegation that La Fontain, the purchaser, had made default in the second payment as provided for in the contract. The defense was that the time of payment had been extended by parol contract, and that before the commencement of this suit the defendant La Fontain tendered the amount of the payment and the interest that had become due on the same; and that

Cythe *v.* La Fontain.

the said defendant has always, since said tender, been ready and willing, and is still ready and willing, to pay the same, and that he has brought the money into court ready for the plaintiff if he will accept the same.

On the trial the contract was produced and proved, by which it appeared that on the second day of August, 1864, Francis Ponto, by his written agreement of that date, for the consideration of the sum of $107.75 to be duly paid by Abram La Fontain, contracted to sell the premises in question situated in the town of Champion, Jefferson county, to La Fontain; and that La Fontain agreed to pay the same in three equal payments, together with interest to be paid annually; the first payment to be made 29th of June, 1865, the said La Fontain to have possession on and after the date of the said agreement, and in case of failure of payments, the contract to be void.

The defendant went into possession, but the payment that became due June 29, 1865, was not made. There was evidence tending to show that it was postponed by consent of the vendor; that afterward Ponto called upon him for it, but he was not prepared to make it, when he declared his intention to sell the land to the plaintiff, and that La Fontain expressed his willingness that he should sell.

On the 3d of July, 1865, Ponto and his wife conveyed the premises to the plaintiff for the consideration of $115.35, and at the same time Ponto assigned to the plaintiff the contract of sale. On the same day the plaintiff served upon La Fontain a written notice declaring the contract to be null and void and demanding a surrender of the premises. On the 5th day of July, 1865, La Fontain attempted to make a tender, and on the 6th day of July actually tendered the amount due on the contract with interest. The only reason the plaintiff gave for not accepting the tender, was that it was not enough.

The judge on the trial found as additional facts that

the time of payment was extended; that on the 3d day of July, Ponto requested payment and that La Fontain said he could not pay, and also told Ponto to sell, and requested time of the plaintiff in the event he purchased. This fact is found against the evidence of La Fontain, who testified that he did not assent to the sale to the plaintiff, nor did he understand that Ponto intended to sell, or the plaintiff to purchase any thing beyond the payments.

It is also found by the judge that the value of the premises was considerable more than the amount due upon the contract, so that it would be improbable that La Fontain should be willing to forfeit his contract. As a matter of law the judge found that the transaction of the 3d of July was a rescission of the contract, and that La Fontain cannot now insist upon any rights under it, and thereupon ordered judgment for the plaintiff.

*Jas. F. Starbuck,* for the plaintiff.

*L. H. Brown,* for the defendant.

*By the Court,* MORGAN, J. The case contains only a general objection to the legal conclusion of the judge upon the trial, and if this was strictly a legal action, and did not depend for its decision upon equitable considerations, it is doubtful if we have any authority to review the case.

Under the Code of Procedure, the defendant may, however, interpose on equitable as well as a legal defense; and when it is inequitable to enforce a penalty or forfeiture, the court may doubtless consider the case in the same view as though the defendant had commenced a cross action, or applied for an injunction to restrain the vendor from proceeding against the vendee in ejectment. An injunction was formerly applied for in such case, and granted, when

the court, under the circumstances, deemed it equitable to relieve the tenant from a forfeiture of his estate.

This jurisdiction was often ancillary to that in *specific performance*, for the purpose of preventing the defendant making use of the legal interest vested in a way inconsistent with the equity claimed by the plaintiff; and an injunction was allowed on the plaintiff showing a *prima facie* case for *specific performance*. (1 *Waterman's Edw. on Injunctions*, 49, 50. *Fry on Specific Performance*, 334, § 760.)

And this relief has been applied to cases where a specific performance of a contract is sought to be enforced, and yet the party has not punctually performed the contract on his own part, but has been in default, (2 *Story's Eq. Jur.* § 1315,) especially when the party comes *recenti facto* to ask performance; the suit is treated with indulgence, and generally with favor by the court. (*Id.* § 776.) When time is of the essence of the contract it may be waived by proceeding in the purchase after the time has elapsed, although if the other party on notice to perform is afterwards guilty of improper delays in completing the purchase, the relief will be denied. (*Id.*)

When the terms of an agreement have not been strictly complied with, or are incapable of being strictly complied with, still if there has not been gross negligence in the party and it is conscientious that the agreement should be performed, a court of equity may interfere, and decree a specific performance. (*Id.* § 775. *Willard's Eq. Jur.* 292, 293, 294.)

The judge, in his opinion, expresses regret that he is compelled to come to the conclusion he does, as it may deprive the defendant of a valuable interest in the property. I think it is apparent that the learned judge did not look into the equity of the defendant with a view of relieving him from the forfeiture of his contract. The evidence tended very cleary to show that the defendant did not intend to forfeit the contract, and that he probably

labored under a misapprehension as to his rights. It appears that he immediately applied to the plaintiff, after he took a conveyance of the premises, for further time to make his payments; but the plaintiff immedaitely gave him notice of forfeiture. This is wholly inconsistent with the conclusion that the defendant supposed that he had consented to a rescission of the contract, whatever the other parties might have thought of it.

It would seem from the evidence in the case that the defendant acted in ignorance of his rights; but as he offered to pay on the fifth of July, it would be very harsh to deprive him of a valuable interest, because he had, in ignorance of his strict duty, neglected to pay from the 3d to the 5th of July. And there are respectable authorities which declare that the plaintiff waived the forfeiture on the 6th, when the payment was actually tendered, by refusing it upon another and untenable ground. Although the offer of payment was too late to subject the plaintiff to damages for non-performance, it was in season to deprive the plaintiff of his right to insist upon a forfeiture. (*Friess* v. *Rider*, 24 *N. Y. Rep.* 367, *Allen, J. citing and commenting upon the authority of Gould* v. *Banks*, 8 *Wend.* 562.)

It was said by Cowen, J. in *Wright* v. *Moore*, (21 *Wend.* 234,) that when the vendee declares that he cannot pay, and that the land must probably revert, there appears to be an end to all implied understanding that the possession should continue, and a court of equity would, after that, feel *reluctant* to interfere and protect the possession, even in the event of the vendee's changing his mind, and offering to pay. The power of a court of equity thus to interfere, is here acknowledged, and where it would be unconscientious for the vendor to insist upon a forfeiture in such a case, I think the court would be somewhat astute to seize upon almost any circumstance which would deprive the vendor of the right of enforcing a forfeiture. And there

Cythe *v.* La Fontain.

is a manifest distinction between cases where a forfeiture is claimed, and where it is resisted. Where it is claimed, it may be waived according to the authorities by the vendor putting his refusal to accept upon untenable grounds; but while the vendee may thus get rid of a forfeiture, he cannot take advantage of it to enforce a penalty or forfeiture against the vendor.

In my opinion the equity·of the defendant to apply for a specific performance of the contract upon tendering payment was not sufficiently considered by the learned judge on the trial. The claim of the defendant to a specific performance of his contract is an application to the equitable jurisdiction of the court; and in such a contract time is not generally considered very material, because the land sold was not of greater or less value, according to the effluxion of time. And the parties themselves treated it as not of the essence of the contract, for the judge finds, as I understand the case, that the time of the second payment was extended by parol until notice should be given by the vendor that he required the same; and no notice was given that payment was required until the third day of July, and then the vendee was requested to pay *immediately* or else the vendor would sell and convey the premises to the plaintiff. Upon a conveyance that day to the plaintiff which was accompanied by an assignment of the contract, the plaintiff gave immediate notice to the defendant that the contract was forfeited for non-payment of the second installment.

As notice was required on the third day of July, before the defendant could be considered in default, it is apparent the notice should have given the plaintiff a reasonable time to make the payment. As was said by Chancellor Walworth in *Harris* v. *Troup*, (8 *Paige*, 427,) it would be inequitable after the vendee had waived the forfeiture " to suddenly stop short and insist upon a forfeiture, without any previous intimation that he intended to do so."

Without doubt, the vendor after waiving payment at the time fixed by the contract, could by proper notice bind the defendant to make the payment within a reasonable time, which time must greatly depend upon the circumstances of the particular case; and three days notice by a vendor would, it seems, be too short. (*Dart on Vendors and Purchasers*, 211. *Sug.* 306.) And it was held in *Durand* v. *Sage*, (11 *Wis. Rep.* 151,) that where there had been a default in making payment upon a contract for the sale of real estate, and the party to whom the money was due, did acts which waived the payment, the time of payment was not so much of the essence of the contract that one day's default should defeat the rights of the other party. In *Edgerton* v. *Peckham*, (11 *Paige*, 352,) the question is discussed with great research and ability, by *Gridley*, vice chancellor, where it is clearly shown by citation of numerous authorities that the court may relieve the vendee from a forfeiture of his contract, after it has been partly performed, and there has been no change in the circumstances of the parties; and when the omission to pay at the exact day has not been so unreasonable as to furnish evidence of abandonment of the contract by the vendee, or in some degree to have affected the circumstances of the parties or the property in question.

In my opinion, the plaintiff could not terminate the contract without giving to the defendant a reasonable time to make the payment; and, I think, the defendant never intended to abandon the purchase. The contract was in full force when the plaintiff took the conveyance, for he undertook to deal afterward with the defendant and forfeit the contract. To enable him to do that, he took an assignment of the contract, as well as a conveyance of the legal title. It is made a question whether the plaintiff merely purchased the payments or the land. I do not regard the question of any importance, except as it may have confused or misled the defendant. The plaintiff paid

Cythe *v.* La Fontain.

$115.35 for the conveyance, which was just the amount due upon the defendant's contract of purchase. This was much less than the premises were worth. If the defend-ant had then paid the second installment, the plaintiff would have realized the amount he paid for the convey-ance, with interest. But, if he could, by his dealings with the defendant, forfeit the contract, he would have obtained the premises, valued at nearly $400, for the sum of $115.35. As the defendant was excited, and may have been quite ignorant of the English language, it was not a difficult matter for the plaintiff to adopt a course of con-duct towards him which would furnish an excuse for terminating the contract. The defendant, however, testi-fied that he supposed that the plaintiff was simply buying the payments. If the plaintiff had explained, and informed the defendant that he intended to forfeit the contract for non-payment, if he did not pay within a reasonable time; and if he had waited such reasonable time, the case would be different.

The principle upon which the court proceeds in such a case is, that one party ought not to take advantage of a legal right, when its rigid exercise would produce loss or injury. If the vendor can have the full benefit of his con-tract, as originally provided, the court regarding the sub-stance of the transaction, and having authority to do so, will relieve against a forfeiture or penalty, and will sustain the performance of the contract, if it can adminis-ter real justice between the parties. (*Joremy's Eq. Jur.* 471.)

There is no doubt as to the real justice of the case. If the defendant is allowed to perform the contract, he only retains what clearly belongs to him, while the plaintiff will obtain all he has paid, with legal interest. The value of the property is not fluctuating, and there has not been such an unreasonable delay, in the payment of the second installment, as to furnish evidence of an abandonment;

while I am quite certain that the defendant never intended to abandon it, although he may have been caught in the use of language, which may have given color to such an inference. Upon the facts detailed in the evidence and findings of the judge, I am of opinion that the defendant is entitled to a specific performance of the contract by the plaintiff.

The defense set up does not claim affirmative relief. But that is not necessary. Even in a complaint, if the facts stated entitle the plaintiff to a particular relief, the plaintiff may proceed as though he had prayed in terms for such relief, although the complaint contains no such prayer. (*Emery* v. *Pease,* 20 *N. Y. Rep.* 62.) And a defect in the complaint or answer is aided by proving the facts material to the cause of action or defense. (*Lounsbury* v. *Purdy,* 18 *id.* 515.) And when the ground of defense may be clearly understood by the answer, and the parties go to trial, and actually try the very question on which their rights depend, objections to the answer, on account of a defective statement of facts, will be disregarded on appeal. (*Phillips* v. *Gorham,* 17 *id.* 275.) And in *Bate* v. *Graham,* (11 *id.* 237,) a complaint was amended after appeal by adding a material allegation.

There having been no objections taken upon the trial, as to the form of the answer in this case, and the facts appearing in evidence upon which the rights of the parties depend, I am of opinion that it is the duty of the court, on appeal, to treat the answer as sufficient, and, if it is not, to allow an amendment. (*Wright* v. *Whiting,* 40 *Barb.* 235.)

Upon the facts proved on the trial, and found by the judge, the question is, whether, according to the whole law of the land applicable to the case, the plaintiff makes out the right which he seeks to establish, or the defendant shows that the plaintiff ought not to have the relief sought. (*Johnson, J. in Crary* v. *Goodman,* 2 *Kern.* 268.) The decision in this case consisted of a single conclusion of

Cythe *v.* La Fontain.

law, from an undisputed state of facts, and a general exception is available. (9. *N. Y. Rep.* 663. 10 *id.* 328.) ·

The action is, doubtless, to be regarded as a legal action for the recovery of specific real property, and is triable by a jury. The Code, however, has made a provision in such a case that the jury may render a general or special verdict; but, if they render a general verdict, the court may instruct them to find upon particular questions of fact, to be stated in writing. (*Code*, § 261.) And when a special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court is required to give judgment accordingly. (*Code*, § 262.) And the court may, in giving judgment, grant to the defendant any affirmative relief to which he may be entitled. (*Code*, § 274, *sub.* 2.) When the trial is without a jury, doubtless the court may render the same relief.

The circumstances which, in a court of equity, would authorize the court to interfere to protect a tenant or purchaser in possession of real estate against a forfeiture, have never been considered proper subjects of trial by a jury; but when the jury find the facts upon which the right to relief depends, it is the duty of the court to proceed to administer the law upon principles of equity applicable to the facts thus found. The Code has not made any provision, in such a case, authorizing the court to deal with the question of costs; but the costs are chargeable to the plaintiff, although the defendant, in an equitable action for specific performance, may be charged with the costs, or the relief may be awarded to him without costs. This is to be regretted, but I know of no authority for denying costs to the defendant, if he succeeds in this action. As to the costs of appeal, they are in the discretion of the court. (*Code*, § 306.)

In my opinion, the judgment should be reversed, without costs, and a new trial granted. There is, however, no necessity for another trial, as upon the facts of the case as

disclosed on the trial before the judge, the defendant is entitled to a judgment in his favor, he having brought the amount of the second payment into court, where it remains, subject to the order of the plaintiff. But I am not aware that we can direct final judgment, in such a case, for the defendant. If not, the cause will have to go back for a new trial.

Foster, J. concurred.

Judgment reversed, and new trial granted.

[Onondaga General Term, January 7, 1868. *Foster, Mullin* and *Morgan,* Justices.]