JOHN A. GRAY, Respondent, v. SAMUEL W. GREEN, Impleaded, etc., Appellant.

*Contract — refusal to perform — when it constitutes a breach — Customary mode of payment — departure from — notice of — Neglect to pay money into court, after tender — party charged with interest and costs.*

To entitle a party to maintain an action for a breach of a contract on the ground that the other party has, before the arrival of the time therein designated for the performance of the acts therein provided for, refused to perform the same, it must be shown, <u>unless the refusal has been acted on</u>, that such refusal was positive and was persisted in down to the time when the performance should have been made or tendered, or that the party had rendered himself unable to perform the contract on his part.

Where parties to a contract have modified or given a practical construction to its terms — *e. g.*, as to the manner and place of making payments thereunder — such modification or construction continues binding upon them, until one or the other refuses to extend it further and communicates that conclusion to the other party.

Where a party, after making a tender, neglects to pay the same into court, he is liable for interest thereon together with the costs of the action.

APPEAL from judgment in favor of the plaintiff, entered on the trial of the action at the Special Term.

*Edward N. Dickerson*, for the appellant.

*Clarkson N. Potter*, for the respondent.

DANIELS, J. :

The judgment recovered was for the whole amount unpaid upon a contract entered into between these parties on the 30th day of April, 1869. By its terms, the defendant agreed to pay the plaintiff $100,000, in installments of $2,500 each, with interest, on the amount unpaid, on the first days of August, November, February and May of each year, until the whole sum should be paid. It was further agreed that if the defendant should fail, or neglect to pay either installment, with the interest as it should become due, and it should remain due and unpaid for thirty days,

that then the entire sum of $100,000, or the balance thereof unpaid should, at the option of the plaintiff, become immediately due and payable.

On the 14th of May, 1869, the plaintiff gave the defendant specific directions, by letter, concerning the disposition to be made of moneys becoming due under the contract. And on the 5th of November, 1869, he, in the same manner, gave further directions upon the same subject, by which he made the defendant, for the time being, his private banker. The defendant acquiesced in, and assented to, these directions, and acted according to their tenor and effect until April, 1870. After that, all the payments upon the contract were made to the plaintiff, and received by him at the office or place of business of the defendant, to and including the installment which became due on the 1st day of November, 1872. That mode of performance of the contract was tacitly adopted and conformed to during the intervening period of time. The practice was so uniform, in this respect, that it was found by the court to have become their established custom for the defendant to give written notice to the plaintiff at the time when the payments became due under the contract, specifying the amount due, and stating that it was ready to be paid at the office of the defendant, and the plaintiff called for the money and afterwards receipted for it on the receipt book of the defendant, at his office. This was done in respect to every payment, except those which were paid by the defendant, as the private banker, or the attorney in fact, of the plaintiff. And it indicated the existence of an understanding that the payments should be made and received at the defendant's office, although no place of payment was mentioned in the contract, and that it should be performed in that way. It was a practical construction or modification of the terms by the acts of the parties, which continued to be binding upon them until one or the other refused to extend it, and intimated that conclusion to the other party. (*Harris* v. *Troup*, 8 Paige, 423 ; *Boody* v. *Rutland R. R. Co.*, 24 Ver., 660; *Barker* v. *Troy, Rutland and Burlington R. R. Co.*, 27 id., 767.) And as long as it continued to be so performed, without notice of any dissent from this practical arrangement, no forfeiture of the principal credit was incurred.

But before the payment of February 1, 1873, became due, a

letter was written by the defendant to the plaintiff, from which it was held the latter could infer that these payments were to be discontinued. It was written on the 23d of January, 1873, and it contained the assertion that there had been a clandestine arrangement, to which the plaintiff was a party, by which a large portion of the proceeds of waste paper had been diverted from the treasury of the firm that had been dissolved by the agreement in controversy, and concluded by making a claim against him on that account to the extent of $25,000, besides interest, and demanding payment of the amount. The letter made no allusion to the contract, and in no way intimated that the installments, payable by its terms, would not be met afterwards as they previously had been. Whatever the plaintiff might have suspected, it, in fact, contained no refusal to make such future payments. And that, at least, was necessary to justify the plaintiff in abandoning the arrangement previously existing, as long as no notice of the existence of any such design was in any form given by him. The rule upon this subject requires that there must be a positive refusal to perform when it is made before the time fixed for performance by the contract, to justify the other party in regarding that as a breach, or the party alleged to be in default must have deprived himself of the ability to do the act required on his part. (*Bernardy v. Harding*, 8 Exch., 822; *Skinner v. Tinker*, 34 Barb., 333; *Lovelock v. Franklyn*, 55 Eng. C. L., 371; *Newcomb v. Brackett*, 16 Mass., 161; *Leigh v. Patterson*, 4 Eng. C. L., 267; S. C., 8 Taunt., 540; 2 Moore, 588.) And other authorities have held that a mere refusal itself, before the arrival of the time designated for performance, not united with any other circumstance tending to show an actual abrogation of the contract, or a design on the part of the other party to act upon it, will not be sufficient to maintain an action for the breach of an existing agreement. *Phillpotts v. Evans* (5 Mees. & W., 477); *Ripley v. McClure* (4 Exch., 358, 445); *Danube, etc., Railway Co. v. Xenos* (103 Eng. C. L., 151; affirmed, 106 id., 824), and *Hochster v. De Latour* (20 Eng. L. and Eq.), 157, and *Cort v. Ambergate, etc., Railway Co.* (6 id., 230), are also cases of that description. The most that was sanctioned by the last case was that a refusal unretracted, and continuing down to the time stipulated for performance, would constitute a breach of the agreement. (Id., 237.)

And where the refusal has not been acted on, that is the result of the authorities upon this subject. They were generally referred to and considered in the case of *Crist* v. *Armour* (34 Barb., 378), and the conclusion was maintained that a mere refusal to perform would only constitute a breach where it was persisted in to the time when performance ought to be made or tendered, unless the party alleged to be in default had incapacitated himself to do what he had undertaken to perform. (Id., 387.)

The effect of a mere refusal has been stated to be, that if before the time arrives at which a party is bound to perform a contract, he expresses an intention to break it, this of itself does not amount to a breach thereof, but if such expression of intention remain unretracted when the time arrives for the other party to perform his part of the contract, this fact will dispense with such performance. (2 Chitty on Con. [11th Am. ed.], 1079, 1080.) Under this principle, which appears to be very well sustained, and it certainly is a reasonable one, even if the letter could be properly construed into a refusal to make further payments until the claim asserted by it was adjusted, it was essential, as the plaintiff took no action upon it, that it should continue effective down to the time when the payment was to be made in order to relieve him of the obligation to call for the money. But that was not the case, as the evidence proved, and the court found the fact. For it appeared that on the 1st of March, 1873, which preceded the expiration of the thirty days within which the forfeiture could be saved by the customary and stipulated payment, the defendant drew his check on the Park bank for $3,651.40, the amount stated by him to be then due and payable, and left a statement of it, with the check, with his book-keeper, for the purpose of delivery to the plaintiff, in case he called, and notified the plaintiff thereof by letter, as he had formerly done. And these facts were found as established by the court. They showed that it was no part of the purpose of the letter, to refuse payment under the terms of the contract. And the plaintiff had notice of that fact before the time had passed, in which the forfeiture of the credit could be avoided by payment of the installment. If the letter could have been construed into a refusal to pay by the plaintiff, this was a plain retraction of it in time to save the defendant's rights. It was

a performance within the time allowed for the purpose of preventing the election by the plaintiff to declare the entire debt due and payable. The law does not favor forfeitures, and this was sufficient to avoid it according to the established practice and understanding of the parties, concerning the manner in which payment should be made and received under the terms of their contract. When the plaintiff received notice that the payment awaited his own action in the accustomed manner, it was his duty, if he designed to return to the letter of the agreement, which had never been insisted upon, to notify the defendant of the fact. Without such notice, he could have no knowledge of the plaintiff's intention. And good faith required that he should not endeavor to secure an unjust advantage in that manner. The result of his success would be more than the mere recovery of his debt, for it was made a lien upon the property for the price of which it was incurred, and which the judgment required to be sold by a receiver for its satisfaction. Before that should be sustained, under the circumstances shown, the defendant ought also to have been admonished that the mode of performance previously sanctioned, and practically assented to by the acts of the parties, would no longer be accepted. The letter of the first of March indicated that the defendant supposed that practical arrangement still remained in force, and if he was then indisposed to assent to it, the plaintiff should, at least, have so informed him, when he might have tendered the payment, personally, which he still believed could well be made by leaving the check at his office. The defendant was misled by the course of their former dealings, and by his ignorance of the plaintiff's probable purpose. To permit him to succeed under that state of the case without attempting, in any manner, to correct the misapprehension which it was plain existed, and had, in part, been produced by his own previous acquiescence, would be an injustice that should not be allowed.

After it became evident that the plaintiff had concluded to insist upon a personal offer of the payment to himself, and not to call at the defendant's office for it, as he previously had done, and on the 11th of March, 1873, the defendant tendered him the sum of $3,656.20, which he refused to receive unless the charge was retracted that was contained in the letter of the twenty-third

of January. That was not done, and the money was not accepted. On the twenty-eighth of May following, a further tender was made of $3,607.17, which was also refused. These offers and refusals in no way changed the relations of the parties as they stood on the first of March, when the defendant was notified that the check for the installment that had become due awaited him in the usual manner. And that was sufficient to prevent the plaintiff from claiming the whole amount of the contract as due, as long as no dissent from the former mode of payment had then been expressed or intimated by him. It was a performance of the terms of the contract, as the parties had practically arranged it by their own previous conduct.

The money tendered or offered by the defendant was not paid into court with his answer, and that, it has been urged, deprived him of all benefit from it. So far as interest upon the installment itself is concerned, and also as to the right of the plaintiff to costs in the action, the objection is undoubtedly good. To that extent, the defense must fail, from the omission to pay the money into court. (*Brown* v. *Ferguson*, 2 Denio, 196; *Simpson* v. *French*, 25 How., 464; *Roosevelt* v. *N. Y. and Harlem R. R. Co.*, 45 Barb., 554.) But, for the purpose of avoiding the forfeiture, that was not required, because the debt claimed on that account was not the one required to be extinguished by the payment. That was a collateral consequence entirely, which was avoided by the performance, of the contract on the part of the defendant. To prevent its occurrence, all that was required was that his default in payment should not exceed in its duration the thirty days mentioned in the contract. And as the check was drawn and left for the plaintiff, and notice given to him of those facts conformably to the mode previously adopted for the transaction of the business within the thirty days, the defendant did not so far fail in his performance, as to entitle the plaintiff to demand and recover the whole amount of the debt mentioned in the contract. That fixed for that time the rights of the parties, and a failure to pay the installment tendered into court did not have the effect of divesting them. It affected merely the amount of the tender, and not the right to the debt which had not then matured, and which was an entirely different subject. (*Hunter* v. *Le Conte*, 6 Cowen, 728;

*Kortright* v. *Cady*, 21 N. Y., 343, 354, 355–366.) The judgment in this case, which was for the whole sum unpaid on the contract, was erroneous, and it should be reversed and a new trial ordered, with costs to abide the event, unless, within twenty days after notice of this decision, the plaintiff will stipulate to reduce it to the amount due for the installment, payable on the 1st day of February, 1875, with the interest, according to the terms of the contract, in which case it should be affirmed as so reduced, without costs of this appeal.

Present — DAVIS, P. J., BRADY and DANIELS, JJ.

Judgment reversed and new trial ordered, costs to abide event, unless within twenty days plaintiff will stipulate to reduce it to amount due for installment, payable on February 1, 1875, with interest, according to the terms of the contract, in which case it should be affirmed, without costs.