CECELIA TOPLITZ and SELMA BRILL, Respondents, v. LOUIS
BAUER et al., as Executors,.etc., of CHARLES BAUER,
Deceased, Appellants.

1. BAILMENT — CHANGE IN OBLIGATION OF PARTIES EFFECTED BY
MERE INDULGENCE OF CREDITOR. The contract of bailment, whereby
personal property is deposited or pledged as security for a debt, is one of
a class of contracts where the mere indulgence on the part of the creditor
by a promise to extend the time, or by his conduct, will effect a change
in the duties and obligations of the parties to each other as prescribed by
the original agreement.

2. PLEDGOR AND PLEDGEE — WAIVER BY PLEDGEE OF RIGHT TO
STRICT PERFORMANCE — DISPOSITION OF PLEDGE UNDER CIRCUMSTANCES
AMOUNTING TO A CONVERSION. Where the original contract, under which
a policy of life insurance is pledged as collateral security for the payment
of a promissory note, permits a sale, public or private or otherwise, or a
surrender of the policy to the company issuing it, without notice to the
pledgor, the right of the pledgee to so dispose of it upon default in pay-
ment of the note, may be waived by any agreement, declaration or course
of conduct on his part which leads the pledgor to believe that a forfeiture
will not be insisted upon without an opportunity given him to redeem, and
no new or independent consideration is required to support the waiver; and
if, having waived his right to a strict performance of the contract, the
pledgee surrenders the policy to the company, without notice, he is
liable for the damages occasioned thereby in an action of conversion; and
in such an action, the plaintiff is not obliged to show affirmatively that he
could have raised the money to pay the debt at the time of the conversion
if notice had been given.

3. MEASURE OF DAMAGES FOR CONVERSION OF PLEDGE. It seems, the
rule of damages to be applied in such a case would be the cost of replac-
ing the policy on the same terms in a perfectly sound company at the time
of the surrender; but where it appears that at that time the insured was
suffering from a fatal disease, from which he subsequently died, and that
he had ceased to be an insurable risk, and the company, having canceled
the obligation, refused to reinstate it, the damages are the face value of
the policy, less what it would cost to carry it by payment of another
premium, which fell due before the death of the insured, with interest
from the date of the conversion.

4. WHEN REFUSAL TO CHARGE, IF ERRONEOUS, WILL NOT WARRANT
A NEW TRIAL. Where, in such an action, it is apparent from the whole
scope of the charge that the question submitted to the jury was not
whether the note had been legally extended, but whether the strict pro-
vision of the contract, providing for the sale or surrender of the policy
without notice upon default in payment of the debt when it became due

by the terms of the note, had been waived, a refusal to charge that there was no legal extension of the time of payment of the note after a date specified, there being no consideration for such extension, will not warrant a new trial, where it appears that the error, if any, was subsequently cured by additional instructions to the jury.

*Toplitz* v. *Bauer*, 34 App. Div. 526, affirmed.

(Argued December 14, 1899; decided January 9, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 8, 1898, which affirmed a judgment in favor of plaintiffs entered upon a verdict, and also affirmed an order denying a motion to set aside the verdict and for a new trial.

This action was brought to recover damages for the alleged conversion by the defendants' testator of a policy of life insurance.

The facts, so far as material, are stated in the opinion.

*William B. Hornblower* and *Richard F. Goldsborough* for appellants. There was, at the time of the surrender of the policy, no valid or binding agreement in force to extend the time of payment of the note, there being no consideration for such an agreement. (*Miller* v. *Holbrook*, 1 Wend. 317; *Gibson* v. *Renne*, 19 Wend. 390; *Pabodie* v. *King*, 12 Johns. 426; *Reynolds* v. *Ward*, 5 Wend. 501; *Fulton* v. *Matthews*, 15 Johns. 433; *Kellogy* v. *Olmsted*, 25 N. Y. 189; 2 Pars. on Cont. 26; *Wagmar* v. *Hoag*, 14 Barb. 232; *Philpot* v. *Briant*, 4 Bing. 717; *Gahn* v. *Niemcewicz*, 11 Wend. 312; *Halliday* v. *Hart*, 30 N. Y. 474.) The trial justice erred in applying the doctrine of equitable estoppel to give legal efficacy to a promise of forbearance which was without consideration, and in denying a motion for a nonsuit and one to direct a verdict. (*Williams* v. *Stern*, L. R. [5 Q. B.] 409; *Harway* v. *Lott*, 5 Wkly. Dig. 440; *Holmes* v. *Boyd*, 90 Ind. 332; *Henry* v. *Gilliland*, 103 Ind. 177; *N. Y. L. Ins. Co.* v. *McMaster*, 87 Fed. Rep. 61; *Jackson* v. *Allen*, 120 Mass. 79; *Springsteen* v. *Powers*, 3 Robt. 483; *White* v. *Ashton*, 51 N. Y. 280; *Pratt* v.

*Ano,* 7 App. Div. 494; *Shapley* v. *Abbott,* 42 N. Y. 443.)
There was absolutely no proof that Rosa Lisner's position
was altered for the worse. No evidence has been offered to
show that at any time between October 7 and October 13,
1893, Rosa Lisner had the ability to pay off the principal and
interest of the note and neglected to do so. (*McKenzie* v. *B.
L. Co.,* L. R. [6 App. Cas.] 82; *White* v. *C. Nat. Bank,* 64
N. Y. 321; *T. Nat. Bank* v. *M. Nat. Bank,* 76 Hun, 479;
*Winegar* v. *Fowler,* 82 N. Y. 315; Bigelow on Estoppel
[5th ed.], 638; *Andrews* v. *Æ. L. Ins. Co.,* 85 N. Y. 344.)
The form of action is trover. The proof was, at most, of an
equitable right or title, only arising by virtue of equitable
estoppel. (*Walter* v. *Bennett,* 16 N. Y. 250; *Degraw* v.
*Elmore,* 50 N. Y. 1; *Gould* v. *C. C. Nat. Bank,* 86 N. Y.
75; *People's Bank* v. *Mitchell,* 73 N. Y. 406; *Towle* v.
*Jones,* 1 Robt. 87; *Husted* v. *Thomson,* 158 N. Y. 328; *Gor-
don* v. *Harper,* 7 T. R. 9; *Clemens* v. *Yturria,* 81 N. Y.
290; *Dubois* v. *Harcourt,* 20 Wend. 43.) The court erred
in allowing the jury to find a verdict for the face value of the
policy, instead of limiting the damages to the surrender value
actually received by defendants' testator. (*Wheeler* v. *Pereles,*
43 Wis. 332; Sedgwick on Damages [8th ed.], § 497; *Tyng*
v. *C. W. Co.,* 58 N. Y. 308.)

*Louis Marshall* and *Henry Brill* for respondents. The
relation between Mrs. Lisner and the defendants' testator being
that of pledgor and pledgee, the unauthorized disposition by
the pledgee of the subject of the pledge constituted a conver-
sion which entitled the pledgor to recover damages in an action
at law. (*Wilson* v. *Little,* 2 N. Y. 443; *Markham* v. *Jau-
don,* 41 N. Y. 235; *Lawrence* v. *Maxwell,* 53 N. Y. 19;
*Baker* v. *Drake,* 66 N. Y. 518; *Wheeler* v. *Newbould,* 16
N. Y. 392; *N. Y., L. E. & W. R. R. Co.* v. *Davies,* 38
Hun, 477; *Kilpatrick* v. *Dean,* 15 Daly, 182; *Smith* v.
*Savin,* 141 N. Y. 315.) The defendants' testator had waived
strict performance by Mrs. Lisner of her obligation, and was
estopped by reason of his conduct and his assurances that she

might have further time in which to make the payment, from disposing of her policy until after he had given her a reasonable opportunity for satisfying his demand and saving her property from forfeiture. (*Pigot* v. *Crosby*, 15 C. B. [N. S.] 7)1; *Moses* v. *Brierling*, 31 N. Y. 462; *Dodge* v. *Crandall*, 30 N. Y. 294; *Allison* v. *Loomis*, 29 N. Y. S. R. 617; *Huber* v. *Grauer*, 87 Hun, 100; *Prentice* v. *K. L. Ins. Co.*, 77 N. Y. 483; *Underwood* v. *F. J. S. Ins. Co.*, 57 N. Y. 500; *Thomson* v. *Poor*, 147 N. Y. 402; *Titus* v. *G. F. Ins. Co.*, 81 N. Y. 419; *Ins. Co.* v. *Norton*, 96 U. S. 234.) The rule of damages laid down by the trial court is in all respects correct. (*People* v. *S. L. Ins. & A. Co.*, 78 N. Y. 114; *Atty.-Gen.* v. *G. M. L. Ins. Co.*, 82 N. Y. 336; *Whitehead* v. *N. Y. L. Ins. Co.*, 102 N. Y. 143; *Speer* v. *P. M. L. Ins. Co.*, 36 Hun, 322; *Wilcox* v. *Plummer*, 4 Pet. 182; *A. C. Co.* v. *Mann*, 130 U. S. 79; *Baker* v. *Drake*, 66 N. Y. 518; *Ormsby* v. *V. C. M. Co.*, 56 N. Y. 623; *M. & T. Bank* v. *F. & M. Nat. Bank*, 60 N. Y. 52.)

O'Brien, J. The judgment in this case was entered upon the verdict of a jury, and represents the damages which it is claimed the plaintiffs were entitled to recover for the conversion by defendants' testator of a policy of life insurance. The questions in the case have been very elaborately argued by counsel, who differ widely both as to the theory of the action and the effect of the numerous authorities cited. Much of the argument on both sides is devoted to the real merits of the controversy upon the facts, which we must now regard as settled by the verdict of the jury. In the view which we take of the case it will be sufficient to deal only with those features which we regard as controlling, omitting entirely many minor questions discussed by counsel, and which no doubt were quite important upon the appeal below and upon the trial before the jury. These questions are now to a very large extent eliminated from the debate in consequence of the peculiar jurisdiction of this court.

The insurance policy which is the subject of the controversy

was issued by the Mutual Life Insurance Company of New York, on the 8th day of January, 1873, upon the life of one George Lisner for the benefit of his infant daughters, who are now the plaintiffs in this action, for eight thousand dollars, payable to them on the death of the insured. The policy was in full force on the 16th of July, 1890, when the insured and his wife borrowed from the defendants' testator the sum of eleven hundred dollars, payable in five months after that date, as appears from the terms of a promissory note executed and delivered at the time the money was advanced. Accompanying this note was another instrument in writing, bearing even date therewith, also signed by the insured and his wife, whereby they certified that they had deposited with the defendants' testator, as collateral security for the loan, the insurance policy above mentioned. It was also provided by the terms of this instrument that, in case of non-payment of the note when due, or in case the insured failed to pay all premiums falling due on the policy in the meantime and to deliver to the defendants' testator a receipt therefor from the company at least five days prior to the date when said premiums should become due and payable, then, and in either such case, the legal holder of the note was authorized to surrender to the company said policy, or to sell the same without demand and notice at public or private sale, or otherwise, at the option of the holder, and in the event of such sale the holder was authorized to bid for and buy in for his own account, and hold for his own use, the policy so assigned and deposited, or in case of the death of the insured prior to the maturity of the note, the holder was authorized to collect the moneys coming due on the same in consequence of such death and apply the same in satisfaction of the note, accounting for the surplus to the personal representatives of the insured. The legal holder of the note was in terms constituted and appointed the true and lawful attorney of the insured and his wife with full power of substitution, and was authorized in their name to surrender, sell, assign, transfer or collect the policy and to discharge and release the same.

42

The note matured on December 19, 1890, but Charles Bauer, the defendants'. testator, with whom the original trans-. action was had, did not exact strict performance of the contract at the time of maturity, but from time to time gave indulgence upon the note, and by written and oral agreement without consideration extended the time of payment. The last written extension was given on the 10th of May, 1893, for one month. The proof tended to show that further oral indulgence as to the time of payment of the note and redemption of the security was given indefinitely by the defendants' testator, who all the time continued to hold the note with the security, but on the 13th of October, 1893, without any notice to the insured or to any one else who had any interest in the policy, it was surrendered to the company for fourteen hundred and ninety-four dollars, and the proceeds thus received were applied upon the note. On the 15th of April, 1894, the insured died. The proof also tended to show that in the early part of the year 1893, George Lisner, the insured, who with his wife had pledged tne policy and given the note referred to, was stricken with paresis, and during that year and up to the time of his death was under the care of a physician for this disease, which resulted in his death. During the illness of the insured it appears that his wife conducted the negotiations with the defendants' testator and procured from him the indulgence as to payment referred to, both written and oral. A short time after the surrender of the policy to the company she was informed of what had taken place and had several interviews with the defendants' testator concerning the violation of his promise, and it was then intimated to her that an effort would be made to reinstate the policy, but nothing resulted from these negotiations. The company refused to reinstate the policy on account of the precarious condition of health in which the insured then was, and some two or three months after the surrender the wife of the insured procured the sum paid for the policy by the company to be tendered to it, and demanded that it be reinstated, but this was declined.

The verdict of the jury establishes the fact that the pledgee

of this policy not only waived strict performance with respect to the time of payment of the debt, but by a verbal assurance and by his conduct led the family of the insured to believe that further indulgence would be given, or at least that the pledge would not be disposed of or surrendered without notice to the insured or to the members of his family having charge of his affairs, and a reasonable opportunity given to raise the money for the payment of the debt and the redemption of the pledge. The verdict also imports a finding of fact that at the time the policy was surrendered the insured was suffering with a fatal disease, which was quite sure to result in his death in a very short time, and that all this was known to the defendants' testator and to his brother, who, under his authority, directed the business and actually surrendered the policy.

The broad question presented by the appeal is with respect to the legal effect of these findings upon the rights of the parties. We think it must be conceded at the outset that no legal extension of the time for the payment of the note was given, for the reason that the promise in that respect was not supported by a sufficient consideration. (*Olmstead* v. *Latimer*, 158 N. Y. 313.) The plaintiff cannot recover upon the theory that the right to demand and enforce payment of the debt was suspended at the time of the surrender of the pledge. The holder of the note could doubtless, notwithstanding the indulgence given as to time, demand and enforce payment at any time after the maturity of the original note. But the extension of the time for the payment of a debt, which must be supported by a sufficient consideration, must not be confused with a waiver of the right to forfeit the pledge without previous notice to the pledgor or those who represented him, or were interested in the pledge. The right to sue upon the note may not have been affected by the negotiations, but it does not follow that this is true with respect to the right to dispose of the pledge without notice. The action is one at law for a wrongful conversion of the pledge, and it must appear that the defendants' testator or his brother, representing him and acting in his behalf, was guilty of some wrong or

breach of duty by the act of surrendering the policy to the company without notice.

The original contract under which the policy was deposited as security for the payment of the note undoubtedly did per-. mit a sale or surrender without notice to the insured. But a stipulation of this kind may be affected by the subsequent conduct of the parties and by oral or written extensions of time, though not based on any actual pecuniary consideration. (*Thomson* v. *Poor*, 147 N. Y. 402.) There is a class of contracts, of which we think this is one, where the mere indulgence of the creditor by a promise to extend the time, or by his conduct, will effect a change in the duties and obligations of the parties to each other, as prescribed by the original agreement. The contract of bailment, whereby personal property is deposited or pledged as security for a debt, creates duties and relations peculiar to itself. These duties and relations are governed more by the general maxims of equity than by the strict rules of the common law. It has been said that the pledgee occupies the position of a trustee for the owner, to pay the debt first, and then the surplus over to the pledgor. He is not permitted to deal with the trust property in such a way as to destroy or impair its value. (*Gillet* v. *Bank of America*, 160 N. Y. 560.) It is quite certain that the law imposes duties upon the pledgee quite analagous to that existing in all trust relations. Originally the property pledged could not have been disposed of without notice, and the pledgee was disabled from becoming the purchaser. It is a form of security that has been found convenient in communities devoted to commerce and where wealth has accumulated.

In recent times the right of the parties to enter into a contract providing for a sale or disposition, without notice, has been recognized, and the disability of the pledgee to become the purchaser, it is said, may be removed by express stipulation of the parties. The pledgee doubtless has the right to exact strict performance of the contract according to its terms, and, upon default in the payment of the debt at the time stipulated, he may, under a contract like this, dispose of

the pledge. But if he waives the right to exact strict performance, and gives time and indulgence to the debtor, he cannot recall this waiver at his own option without notice to the pledgor, to the end that the latter may have an opportunity of protecting the pledge. The good faith which the law exacts from a person dealing with trust property will not permit the pledgee, after having once waived the forfeiture or the right to dispose of the pledge upon default of payment at the prescribed time, to suddenly stop short and insist upon the forfeiture for the non-payment of the debt when the other party is unprepared to redeem. Strict performance in such cases may be waived by any agreement, declaration or course of conduct on the part of the pledgee which leads the owner to believe that a forfeiture will not be insisted upon without an opportunity given him to redeem (*Insurance Co.* v. *Eggleston*, 96 U. S. 577), and no new or independent consideration is required to support a waiver of a condition in a contract requiring payment to be made upon a date designated. (*Prentice* v. *K. L. Insurance Co.*, 77 N. Y. 483; *Underwood* v. *F. J. S. Ins. Co.*, 57 N. Y. 500.)

The parties occupy the same relations in this respect to each other as prevail between vendor and vendee in executory contracts for the sale of land. The vendor in such cases holds the legal title of the land in trust for the vendee, who becomes the real owner upon payment of the purchase price. These contracts frequently provide for partial payments, at specified times, and it frequently happens that they are made without very much regard to the exact period of time specified in the contract, and frequently indulgence as to the time of payment is given by the vendor to the vendee similar to that which the plaintiffs claim was given in this case. It has been held that a forfeiture of the contract cannnot be insisted upon by the vendor under such circumstances, although containing an express provision that that result should follow a failure to make the payments at the time stipulated. When the time of payment has been extended, with the assent of the vendor, and no certain time fixed when payment will be required, he

cannot afterwards insist upon a forfeiture of the contract by requiring immediate payment, but the vendee will be entitled to a reasonable time after notice for performance. (*Cythe* v. *LaFontain*, 51 Barb. 186; *French* v. *Row*, 77 Hun, 386; *Harris* v. *Troup*, 8 Paige, 423.) The same principle has been applied to other contracts, which, by their terms, provide for a forfeiture or a loss of the fruits of the contract by the failure to pay a certain sum or to do a certain thing at a specified time. (*Ireland* v. *Nichols*, 46 N. Y. 413; *Galla-gher* v. *Nichols*, 60 N. Y. 438; *Dunn* v. *Steubing*, 120 N. Y. 232.) It is hardly necessary to add that the principle has been applied to forfeiture provisions in insurance contracts with very great liberality.

We are of the opinion that the evidence in this case warranted a finding by the jury that strict performance of the contract providing for the payment of the note at a certain time was waived by the defendants' testator, and also that, notwithstanding this waiver, the policy was surrendered without notice to the insured or his family, or opportunity given to save the policy by the payment of the note. The pledgee could not, under these circumstances, surrender the policy without notice to the insured, although he could have done so had he elected to stand directly upon the terms of the original contract. In all the elementary books on the law of bailments, which deal at length with that form of the contract known as pledge, it is stated that whenever the owner is entitled to notice, and a disposition of the pledge is made without such notice, it amounts to a conversion of the property so pledged, and, doubtless, that is the general rule. So that in our opinion there was no legal error committed at the trial by the submission of the case to the jury. (Story on Bailments, § 308; Edwards on Bailments, § 270; Schouler on Bailments, §§ 229, 232, 239, 264.)

In this review we have not attempted to state the facts as claimed by the defendants. There was a very decided conflict in the evidence with respect to the waiver, or what took place between the parties after the last written extension was

given, and hence the facts are to be viewed according to the legal import of the verdict, not only with respect to the waiver itself, but to the effect it actually had upon the rights of the parties who owned or were interested in the policy. While the plaintiffs were the original beneficiaries, it appears that they had assigned it to their mother, doubtless for the purpose of enabling her to join with her husband in making the note and transferring the policy in pledge as she did. The negotiations for further time were had between her and the pledgee, and also to some extent with his brother, one of the present defendants, who represented him in the transaction. The testimony, *pro* and *con*, covers these negotiations, as well as the pecuniary ability of the insured or his family to pay the debt at the time of the surrender, even if the notice had been given. The provision of the instrument by which the policy was assigned, that in case of default in the payment of the note when due, the holder might sell or surrender the policy, having been once waived, the plaintiffs were not obliged to show affirmatively that the insured or his family could have raised the money to pay the debt at the time the surrender was made, even if notice had been given. If that inquiry was pertinent at all, it was rather for the defendant to show that the notice would, under all the circumstances, have been but an idle ceremony, and could not have changed the situation at the time of the alleged conversion. This point, moreover, is of little practical importance in the case, however viewed, since it is apparent from the testimony in the record that the jury could have found that when the surrender was made the plaintiffs, or the insured, or the family, could have raised the money to pay the note and thus redeem the pledge. That, we think, was the reasonable inference from all the proof, and if these considerations were material to sustain the plaintiffs' right of action, they must be deemed to have been found in their favor by the jury.

We think there was no error in the rule of damages adopted at the trial. The facts bearing upon that question, found or conceded, were these: Before the commencement of the

action the policy or the right of action for the conversion had been assigned to the plaintiffs by their mother, thus practically placing them in the position which they occupied originally as the beneficiaries. When this policy was issued to the father, in 1873, he was thirty-six years old. At the time of the surrender he was fifty-seven. During a period of twenty-one years the annual premium of two hundred and eighteen dollars had been paid, amounting to $4,578. The insured was slowly dying of paresis, and the parties holding the title to the policy as security knew it, as we must assume from the verdict, and knowing this surrendered it under circumstances amounting to a conversion. The insurance company having thus canceled its obligation, refused to reinstate it. The plaintiffs are entitled to complete indemnity for the loss thus sustained, and the inquiry was, what was the loss in contemplation of law. It is obvious that the surrender value, or what the company was willing to pay for it, based upon tables of mortality applied to a sound risk, would be no indemnity for the loss. The reasonable and just rule of damages in such cases would seem to be the cost of replacing the policy on the same terms in a perfectly sound company at the time of the surrender, but the pledgor had then ceased to be an insurable risk under any circumstances existing in the business of insurance; so that the real loss was the face of the policy less what it would cost to carry it by payment of another premium which fell due before the death of the insured. (*People* v. *Security Life Ins. & An. Co.*, 78 N. Y. 114; *Attorney-General* v. *Guardian M. Life Ins. Co.*, 82 N. Y. 336; *Whitehead* v. *N. Y. Life Ins. Co.*, 102 N. Y. 143; *Speer* v. *Phœnix Mut. Life Ins. Co.*, 36 Hun, 322.) In such cases proof of actual damage may extend to facts which occurred or grew out of the injury even up to the date of the verdict (*Wilcox* v. *Plummer*, 4 Peters, 182), and it was not error, we think, to permit the jury in their discretion to allow interest from the date of the conversion upon the value of the policy thus estimated under the peculiar circumstances of this case. (*Arkansas Cattle Co.* v. *Mann*, 130 U. S. 79; *Baker* v. *Drake*,

66 N. Y. 518; *Ornsby* v. *Vermont Copper Mining Co.*, 56 N. Y. 623; *Mech. & Traders' Bank* v. *Farmers & M. Bank*, 60 N. Y. 52.) On the question of damages the court instructed the jury, in substance, that if it was found that the surrender of the policy was made in violation of an under-standing by which the pledgee was to hold his hand and give indulgence or time, and if they were further satisfied that the life of the pledgor was, at the time of the surrender, not insurable, the plaintiffs were entitled to recover the value of the policy at the time of the surrender; but in arriving at such value they were entitled to consider the fact of the death of the pledgor in the month of April following the surrender. The jury were also directed to make allowance to the defend-ants for the amount payable by the terms of the note, includ-ing the interest thereon, and the premium of two hundred and eighteen dollars payable on the policy in January following the date of the surrender and before the death, with interest from that time. They were also permitted in their discretion to allow the plaintiffs, as part of the damages, interest on the actual value of the policy as thus ascertained at the time of the surrender. There was no material error in these instruc-tions. We think that the principles upon which we are dis-posed to uphold the judgment in this case do not pertain exclusively to the jurisdiction of equity. While it is true that in contracts of this character the rights and duties of the parties are governed largely by the doctrines of equity and are based upon the civil law, yet these rights may be enforced and the rules governing the relation applied in an action at law for conversion.

There is an exception to the refusal of the court to charge a proposition presented by the learned counsel for the defend-ants. This request was that there was no evidence of any legal extension of the time of payment of the note after June, 1893, there being no consideration for such extension. When the request was made the record shows that a colloquy fol-lowed between counsel on both sides and the court which shows that while the defendants' counsel knew precisely what

43

the point of his request was, it was not so clear to the counsel
for the plaintiffs or to the court. This was not very surprising since it appears from the record that the phrase
"extension of time" was used throughout the trial interchangeably with mere indulgence or the parol promise to give
further time. The case was not tried or submitted upon the
theory that there was any extension of time that would bar
an action upon the debt, and hence the request, though correct in the abstract, had but little application to the case. It
is apparent from the colloquy referred to that the court
was willing to charge the request if it could be so framed
as to guard against confusing the jury upon the other and
more important question of waiver which was also called an
extension of time, though not requiring any new consideration
to sustain it. The plaintiffs' counsel in the presence of the
jury made it quite clear that he did not claim that there
was any suspension of the right of action on the debt after
the note by its terms became due. In this conflict of views,
based entirely on the meaning of words as it was supposed
they might be understood by the jury, the court, notwithstanding the consent of the plaintiffs' counsel, declined to
charge the request except as already charged, and the defendants' counsel excepted. It is apparent from the whole scope
of the charge that the question submitted to the jury was not
whether the note had been legally extended, but whether the
strict provisions of the contract providing for a sale or surrender of the policy without notice upon default of payment
of the debt when it became due by the terms of the note had
been waived. The defendants could not well have been prejudiced by the omission to charge the request under these circumstances. But if this was not as clear as it seems to be,
the error, if any, was subsequently cured. After the jury
had retired they came into court and asked for further instructions concerning the charge made as to the extension of time,
and the court then gave very clear instructions as to the
question of fact upon which the case turned. The inquiry
was then limited to the question whether the pledgee had

orally consented that the wife of the insured should have further time extending beyond the day of the surrender to procure the funds to pay the debt, and if such oral consent was given, whether the policy was surrendered without notice. We think that, under these circumstances, there is not sufficient in the exception to warrant us in reopening the controversy by the direction of a new trial. The interests of the parties and the administration of justice require courts of review to consider a ruling of the trial court upon such a request made under the circumstances stated not too strictly, or literally, but in the sense and spirit in which it was made and understood by counsel and jury.

The judgment must, therefore, be affirmed, with costs.

All concur.

Judgment affirmed.