# UNITED STATES TRUST COMPANY *v.* BLUNDON.

EQUITY; JURISDICTION; OBJECTIONS AND EXCEPTIONS; PLEDGE, SALE OF; WAIVER; NOTICE; BILLS AND NOTES; INDORSEMENT; DUE COURSE; APPEAL AND ERROR.

1. An objection upon the ground of the adequacy of the legal remedy, to the jurisdiction of equity in a case of a class in which it takes jurisdiction generally, comes too late when not made until the evidence has been heard and the argument begun. (*Tyler v. Moses,* 13 App. D. C. 428.)

2. A pledgee may waive the power, given him by the contract, to sell the pledge without notice to the pledgeor, and thus work a forfeiture of the latter's right; and the waiver requires no new or independent consideration to support it.

3. The mailing of a notice by a pledgee to a pledgeor of intention to sell the pledge is not sufficiently shown by the introduction of a carbon copy of an alleged letter, importing such notice, accompanied by evidence tending to show that the letter was placed among other letters in a receptacle from which the pledgee's messenger took letters for mailing, where the pledgeor testifies that he did not receive it, and it is not shown that it was placed in an envelop addressed to him and stamped.

4. An agreement by a bank to hold a note pledged to it as collateral, and to credit the interest thereon accruing, upon the principal obligation until paid, and then turn the note over to the pledgeor, is binding upon another bank which, in taking over the assets of the former bank under an agreement to assume its liabilities, receives the note as indorsee after an attempted sale by which the transferring bank sought to obtain title, since in such a case the succeeding bank is not a holder for value without notice.

5. A finding of fact by a court of equity upon conflicting evidence,—upheld in the absence of anything to show error.

No. 2687.    Submitted October 15, 1914.    Decided December 7, 1914.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia in favor of plaintiff in an equity suit to compel the surrender of a note pledged as collateral security and for an accounting for the payment thereof.                                        *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is a suit in equity begun by Fannie P. Blundon, administratrix of the estate of Joseph A. Blundon, deceased, against the United States Trust Company, appellant, and the Fourteenth Street Savings Bank. After alleging the death of intestate and the appointment of plaintiff as administratrix, the bill alleged that, before his death, J. A. Blundon had deposited with the Fourteenth Street Savings Bank a note of Frank R. Snowden for the sum of $695, payable five years after date to the order of Joseph A. Blundon. Said note was secured by second mortgage on lots one, two, and three West Riverdale, Maryland, and the improvements thereon. On the same day, May 19, 1909, said J. A. Blundon executed a note to the Fourteenth Street Savings Bank for $216.64, with interest at 6 per cent per annum, payable on demand. Said note contained the following recitals: "Having deposited as collateral security for payment of this or any other liability or liabilities to said bank, due or to become due, or that may hereafter be contracted, the following property: [describing the Snowden note] * * * "with full power and authority to said bank, or its assigns in case of such default in the payment of any of the liabilities above mentioned at maturity to sell, assign, and deliver the whole, or any part of such securities, or any substitutes thereof, or additions thereto, at any broker's board, or at public or private sale, at its option at any time or times thereafter, without advertisement or notice to him, and with

the right on its part to become purchaser thereof at such sale or sales; freed and discharged of any equity of redemption; and after deducting all legal or other costs and expenses for collection, sale, and delivery, to apply the residue of the proceeds of such sale or sales so made to pay any, either, or all of said liabilities as said bank shall deem proper."

The collateral note bears a credit of $17.73 cash on August 7, 1909, and of the same for the yearly interest from August 7, 1909, to September 22, 1911, all indorsed on the back of the note when produced on the trial.

At the time of his death, said J. A. Blundon was indebted to the Fourteenth Street Savings Bank as follows:

Note for $80.80, executed by William B. Severe, indorsed by J. A. Blundon, due September 26, 1909;

Note for $55, executed by Fannie P. Blundon, indorsed by J. A. Blundon, due August 15, 1909;

Note for $75.75, executed by William B. Severe, indorsed by J. A. Blundon;

Note of Joseph A. Blundon for $201, making a total of $473.15.

Shortly after the death of intestate the note of William B. Severe for $80.80 was paid by him. Shortly after said death, note for $60.60 was paid by Fannie P. Blundon. Shortly after said death the note of Fannie P. Blundon for $55, with Joseph A. Blundon as indorser, was substituted by a new note of Fannie P. Blundon, payable to Claude Warren. This last note was paid by Fannie P. Blundon on October 27, 1909, with a check of Frank R. Snowden, for $20.85, being the semi-annual interest due on his note aforesaid, and the personal check of Fannie P. Blundon for the remainder.

That on October 27, 1909, when her attorney discharged her note for $55 as aforesaid, it was expressly understood and agreed that the defendant, the Fourteenth Street Savings Bank, would hold the Snowden note as aforesaid, and collect the interest thereon and credit it on the indebtedness of intestate aforesaid until all of said indebtedness should be paid, and turn over the balance of the proceeds of said note to plaintiff

as administratrix. Plaintiff, relying upon said understanding and agreement, allowed said note to remain in the possession of said bank for the collection of interest, which was always promptly paid, the same to be credited upon the indebtedness of intestate until discharged.

That on May 24, 1911, plaintiff, through her attorney, addressed a letter to the said bank, requesting a description of said collateral note and the balance then due on the indebtedness secured thereby. In reply, said bank stated the indebtedness of intestate at that time as $244.34, and further stated that defendant still held as collateral security therefor the note of Snowden, which it described. Said letter was signed by DeLashmutt as cashier for the Fourteenth Street Savings Bank. That on the —day of — the said Fourteenth Street Savings Bank consolidated and merged with the United States Trust Company under terms and conditions unknown to plaintiff, but she is informed and believes that the United States Trust Company took over all of the assets and contracts of the Fourteenth Street Savings Bank, subject to all equities and claims thereon, and assumed all the liabilities of the defendant, the Fourteenth Street Savings Bank. That among other assets and contracts was the indebtedness of the estate of Joseph A. Blundon to the Fourteenth Street Savings Bank, which was secured by the Snowden note aforesaid, and that the United States Trust Company is not a bona fide holder or owner for value without notice of said note.

That about the first part of June, 1913, the attorney for Frank R. Snowden proposed to pay his note before maturity if it allowed a discount, and plaintiff wrote to defendant trust company asking a statement of her indebtedness, to which defendant replied that it had no note of J. A. Blundon as maker, secured by the collateral note of Snowden, but that it held among its real estate notes the note of F. R. Snowden, and that it was not due until March 22, 1914. That reply was made to this communication, in which the agreement to hold said collateral note and apply payments thereon to the Blundon indebtedness was called to its attention. Receiving no sat-

isfaction, plaintiff tendered to the defendant the sum of $245 in discharge of any indebtedness of said Blundon, and demanded the return of the Snowden note, which was refused. That defendant is about to foreclose the mortgage to secure said Snowden note, and that plaintiff is without plain and adequate remedy at law, and sues in equity.

She prays that the trust company be ordered to surrender to plaintiff the said Snowden note upon plaintiff's payment of any indebtedness that may be due by her as administratrix. That defendant be ordered to account to plaintiff for the said note and the interest received thereon, and to account for the credits entered on the indebtedness of intestate, and for the balance if any still due thereon. That the defendants be enjoined from selling or negotiating, or in any way disposing of the said Snowden note, and from attempting to sell the real estate of said Snowden under the mortgage to secure said note.

That defendant be required to disclose the terms and conditions under which the two defendants were merged, and the terms under which the assets of the Fourteenth Street Savings Bank were taken over, and for general relief.

The defendant trust company answered the bill, admitting the holding of said note and collateral by the Fourteenth Street Savings Bank originally. It specifically denies the alleged agreement of October 27, 1909, with regard to said collateral note. It alleges that about March 10, 1912, the Fourteenth Street Bank, which then held the said note, had given notice to plaintiff though not required so to do, of its intention to sell said collateral to pay the debt secured thereby, and thereafter sold the said note, and from the proceeds paid the indebtedness of intestate. That said note was sold for its value. That after its sale said note was discounted in said Fourteenth Street Bank, and indorsed to defendant, without any notice of any defense as set out in said bill, before its maturity on May 22, 1912, when it purchased all of the assets of the Fourteenth Street Bank.

It denies that the two corporations were consolidated or merged upon terms and conditions unknown to plaintiff, but

says that the fact is that all of the assets of the Fourteenth Street Bank were sold to the defendant trust company and indorsed to it. Among the assets so indorsed was the note of Snowden, which was indorsed to defendant in usual course of business, for value, and before maturity. That there was no merger of said corporations, and the assets of said Fourteenth Street Bank were not taken over subject to all equities and claims thereon, nor was there any assumption of the liabilities of said Fourteenth Street Bank. That no notes of J. A. Blundon were assigned to defendant at said time, and that it received nothing but the Snowden note in such transfer, of which it is now the bona fide holder for value, and without notice.

Issue was joined and the cause was heard in the spring of 1914, when the witnesses were examined in open court.

Upon the conclusion of the testimony, the defendant suggested the want of jurisdiction in equity. The court entered a decree requiring the defendant to deliver to plaintiff the said Snowden note for $695, upon her payment of the sum of $188.-17, being the net amount of the indebtedness of the estate of J. A. Blundon, and continuing the preliminary injunction that had been issued to restrain the negotiation of said note, pending the appeal.

*Mr. H. Winship Whealley* and *Mr. R. B. Behrend,* for the appellant:

The plain, ample, and complete remedy of the plaintiff is an ordinary action at law. This is not a mortgage, but a pledge; it is not a trust, but a bailment. *Bulkeley* v. *Welch,* 31 Conn. 339 (demurrer sustained to bill in equity similar to case at bar); *Roland* v. *National Bank,* 135 Pa. 598 (demurrer sustained to bill alleging conversion of bank stock); *Walker* v. *Bennett,* 9 Cush. 175; *Hayward* v. *Elliott Nat. Bank,* 96 U. S. 611; *Lacombe* v. *Forestall,* 123 U. S. 562; *Flowers* v. *Sproule,* 2 Marsh, 509; Jones, Collateral Securities, Section 431; *Taylor* v. *Turner,* 87 Ill. 302; Cyc. 839, 840, 846; *Glid-*

*den* v. *Mechanics Nat. Bank,* 53 Ohio St. 588; *Rozer* v. *May,* 41 Wash. L. Rep. 121.

*Mr. Daniel W. O'Donoghue* and *Mr. Arthur A. Alexander,* for the appellee:

1. An action at law would not have afforded complainant such a complete remedy, and where equity can grant a more complete remedy than can be had at law, it will take jurisdiction. *Lyon* v. *Russell,* 41 App. D. C. 554; *Hart* v. *Ten Eyck,* 2 Johns. Ch. 100; *Merrill* v. *Houghton,* 51 N. H. 61; *Smith* v. *Anderson,* 8 Tex. Civ. App. 188, 193; *Bryson* v. *Raynor,* 25 Md. 424; *Bank* v. *Construction Co.* 17 App. D. C. 524.

2. There was a valuable consideration for the agreement, or understanding between the bank and appellee's counsel. *Wyckoff* v. *Bank,* 119 N. Y. Supp. 937.

3. The evidence was sufficient to justify the trial court in finding the existence of an agreement. *Calkins* v. *Worth,* 215 Ill. 78; *Smith* v. *Anderson,* 8 Tex. Civ. App. 188; *Re Gompers,* 40 App. D. C. 319.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. The assignments of error raised the question of equity jurisdiction.

2. The holding of the court that there was any consideration shown for the agreement alleged with plaintiff's counsel, that the bank would not sell the promissory note of Snowden which had been attached to the collateral note of Blundon.

3. In finding as the fact that there was an agreement between the Fourteenth Street Savings Bank and the plaintiff by which the interest on the Snowden note would be allowed to pay the principal and interest on the Blundon note or any agreement as testified to by plaintiff's counsel.

1. The objection to the jurisdiction of equity came at a late stage in the proceeding. It was not raised by motion to dis-

miss, but reserved until the evidence had been heard and the argument begun. The allegations of the bill and prayers for relief bring it within the class of cases in which equity has always exercised jurisdiction. In addition to the discovery prayed and the accounting, a temporary injunction was prayed and granted to restrain a negotiation of the undue negotiable note, the recovery of which was sought. This relief equity alone can grant. The objection comes too late to require an analysis of the evidence to determine whether there was a complete and adequate remedy at law. *Tyler* v. *Moses,* 13 App. D. C. 428, 442.

2. The pledgee had the right to waive the sale by which the rights of the pledgeor were forfeited, and such waiver requires no new or independent consideration to support it. *Top-litz* v. *Bauer,* 161 N. Y. 325, 335, 55 N. E. 1059; *Knickerbocker L. Ins. Co.* v. *Norton,* 96 U. S. 234, 240, 24 L. ed. 689, 691.

Having waived the forfeiture, the defendant could not lawfully exercise the power of sale without notice to the plaintiff. An attempt was made to show that such notice had been given by letter a month before the sale was made. Plaintiff testified positively that no such letter had been received. Defendant's proof failed to show conclusively that such letter was in fact mailed. It produced a carbon copy of a letter addressed to plaintiff and testimony tending to show that it was placed among other letters in a receptacle to be mailed. It was the custom so to do, and messenger boys employed in the bank were accustomed to take the letters from the receptacle, and carry them to the mail box. It does not appear that the letter when deposited in the receptacle was in an envelop addressed to plaintiff and stamped. Moreover, the waiver had been by agreement with the attorney of plaintiff, who lived in the city, and whose telephone address was known, to the officers of the defendant, and yet no effort was made to notify him that the sale would take place. On the day of sale, the note was simply indorsed to the cashier of the bank, who immediately discounted it to the bank, receiving the surplus after the discharge of the

indebtedness which the note secured.  The sale was in viola-
tion of the agreement, and passed no title.  While the defend-
ant claims in its answer that it had purchased the note before
maturity, for value, and without notice, it was admitted on
hearing and so recorded in the final decree, that the defendant
took the transfer of the note with the promise to assume any
and all liability that might be proved or established against
the Fourteenth Street Savings Bank, thus disposing of its claim
of purchase without notice.

3. The testimony concerning the making of the agreement to
waive the forfeiture was in conflict.  The court who heard the
witnesses was satisfied that it had been made.  We cannot say
from the statement of the evidence that he erred in this finding
of fact.  The decree is affirmed, with costs.     *Affirmed.*