EDWARD C. KLAPP, Plaintiff, *v.* JULES S. BACHE and Others, Defendants.*

Supreme Court, Schenectady County, January 13, 1930.

* Revd., 229 App. Div. 415.

W. *Arthur Kline* [*Borst & Smith* of counsel], for the plaintiff.

*Fryer & Lewis*, for the defendants.

ROGERS, J. In this conversion action by a customer against his stockbroker for closing out the customer's margin account without reasonable notice, the plaintiff has recovered a verdict of $6,098. The defendants have moved to set aside the verdict upon various grounds.

Because the plaintiff failed to maintain sufficient margin to adequately protect his account the defendants notified him on June 11, 1928, that they had placed stop loss orders on all of his stocks and in the notice they enumerated the stocks and the stop loss order amount at which they proposed to let each stock be sold. Plaintiff received this notice June 12, 1928. On the same day defendants notified plaintiff by letter, which he did not receive until the thirteenth, that they had sold three of his stocks pursuant to the stop loss orders, and that unless more margin was received they proposed " before ten o'clock tomorrow morning we will sell your securities at the opening." They did not receive the margin and sold the stocks at the opening on the thirteenth. The avails of these sales, after deducting the amount due the brokers, was slightly in excess of $2,000. The defendants claim that the plaintiff gave them the right to sell his securities without notice whenever deemed necessary for their protection by the customer's agreement, which he executed and delivered to them.

This agreement provides in part as follows: " Upon failure of the undersigned (customer) to comply with any of the provisions hereof, or whenever deemed necessary for your protection you are hereby authorized and empowered to sell, assign and deliver all and any part of the securities pledged hereunder, upon any exchange or market, without demand for margin, and/or advertisement, or notice of purchase or sale, which are expressly waived, and *no specific demand or notice shall invalidate this waiver.*"

The customer's agreement was prepared by the defendants in printed form. It is their customery customer's agreement. Under such circumstances the agreement should be strictly construed against the brokers and be given a liberal interpretation in behalf

of the customer. " If there is any uncertainity or ambiguity as to the meaning of the agreement, it should be resolved in favor of the plaintiff, as it was the defendant who prepared this contract. If there is any doubt as to the meaning of the terms employed, the defendant is responsible for it as the language is wholly its own. We think the principle controlling as to the construction of insurance policies * * * is applicable to this agreement, and that it should be liberally construed in favor of the plaintiff." (*Gillet* v. *Bank of America,* 160 N. Y. 549, 554.)

The question arises whether the broker's acts in placing the customer's stocks on stop loss orders, and the next day without reasonable notice to the customer canceling the stop loss orders, and selling the stock, were authorized by the agreement. It will be noted there is nothing in the agreement in reference to stop loss orders. By the agreement the brokers clearly had the right to sell the stocks without notice. If they had done so the plaintiff could have no just complaint. Instead of selling they in effect said to the customer, we will not exercise our rights to sell your stocks at the present market price, we will hold these stocks until the prices drop to such and such points, and then after telling him that, without giving him notice that they had changed their minds, they did not hold the stocks until they reached the stop loss order points, but sold them at the market.

It seems to me that the brokers waived the provision in the customer's agreement giving them the right to sell without notice and also the provision " and no specific demand or notice shall invalidate this waiver." No pecuniary consideration is necessary for a waiver. Nor is any money consideration necessary for a waiver of a waiver.

" If the broker waives the right to exact strict performance, and gives time and indulgence to the customer, he cannot recall this waiver at his own option without giving notice to the customer, to the end that the latter may have an opportunity of protecting the account. Good faith will not permit the broker, after having once waived the right to close the account without notice upon default of payment at the prescribed time, suddenly to stop short and insist upon closing the account when the other party is not prepared to put up the margin. Strict performance in such cases may be waived by any agreement, declaration or course of conduct on the part of the broker which leads the customer to believe that time will be given him to put up additional margin, and no new or independent consideration is required to support such a waiver. (*Toplitz* v. *Bauer,* 161 N. Y. 325, 333.) " (*Rosenthal* v. *Brown,* 247 N. Y. 479, 485.)

After the customer received notice of the stop loss orders on the twelfth, he had the right to expect that none of his stocks would be closed out unless the market price fell to the stop loss order point thereof. When the brokers canceled the stop loss orders and sold the stocks they converted the same and became liable for the difference between their market value at the time of the conversion and the highest point the stocks reached during a reasonable period thereafter, which the parties stipulated on the trial should be considered as thirty days.

The defendants also contend that the acceptance by the plaintiff of the proceeds of the sale of his securities was a ratification of the sale as a matter of law. It is contended by the plaintiff that when the stocks were sold the conversion was complete; that his right of action then arose, and that any moneys accepted by him thereafter have no bearing. (Citing *People* v. *Bank of North America,* 75 N. Y. 547, 564.)

The plaintiff on the twenty-fifth of the month served on the defendants a demand for the return of the securities, thus suggesting that the conversion was not complete until a demand and a refusal.

In *Jacobs* v. *Moore* (195 App. Div. 452), in which Page, J., dissents, the head note reads as follows: " Where a customer accepts a check from his stockbroker for an unliquidated claim and retains the proceeds thereof, he thereby ratifies the broker's acts as his agent, and cannot thereafter be heard to dispute or repudiate the same, or claim damages for an alleged conversion of the stock involved."

The fact that the plaintiff accepted from the defendants $2,000 about ten days after the stocks were sold is conceded, but the circumstances under which the payment was made are in dispute. The defendants claim that the plaintiff asked for the check and expressed himself at the time in language strongly indicating his approval of the sale of his securities. The plaintiff claims he received the check through the mail with no letter or notice of explanation, and that when he used it he did not intend to ratify the sale; that it did not purport to be and was not in fact in full settlement of his account with the brokers. The jury evidently found that the plaintiff's version of what occurred in regard to the check was true, and, if so, I do not think there was ratification of the sales as a matter of law.

The defendants also argue at length in their brief that the verdict is excessive. They claim that the $2,000 paid to plaintiff should have been deducted from the $6,098 found by the jury, otherwise the defendants contend that they are making a double payment of the $2,000. I do not view it that way. The plaintiff is entitled

to recover all the stocks and securities were worth at the time of the conversion, which was approximately $2,000, and in addition he is entitled to recover the difference between the amount they were then worth and the highest market price they reached within thirty days. The $6,098 represents this latter amount, not including the three stocks that were sold on the stop loss order and after deducting the brokers' commissions and interest in the amount of $642 and adding dividends that had been declared before the conversion, but received prior to the trial, in amount $475. This latter item was included by consent, provided the jury found there was a conversion.

The defendants also contend in their brief that the verdict should not have included any allowance for the following stocks, Armour B, Texas Gulf, Bancitaly, Mavis Bottling, for it does not appear in the testimony that the stop loss orders were not reached, nor that the stocks did not go as low as the stop loss orders.

It seems to me that it makes no difference that the stocks did not go as low as the stop loss orders, because the stocks were not sold on the stop loss orders. The brokers' letter of June twelfth specifies the three stocks that were sold on the stop loss orders. The balance of the stocks, not being sold pursuant to the stop loss orders, were converted.

The verdict is justified by the proof, and, therefore, the motion to set it aside is denied.