THOMAS, Respondent, v. UPDIKE GRAIN COMPANY, Appellant.

(244 N. W. 647.)

(File No. 7278. Opinion filed October 10, 1932.)

E. E. Sullivan, of Sioux Falls, for Appellant.

Danforth & Davenport, of Sioux Falls, for Respondent.

WARREN, J. Plaintiff instituted this action against the defendant company to recover the difference in price of 5,000 bushels of wheat which the plaintiff had purchased on the 6th day of May, 1929, through the defendant as his broker or agent, at the price of $1.14¼ per bushel, and that on the 31st day of July, 1929, the "plaintiff directed and ordered the said defendant to sell said 5,000 bushels, of July wheat, which it had purchased for the plaintiff on May 6th, 1929; the said sale to be at 11:45 o'clock A. M., Central Standard Time on July 31, 1929; that the price of the said July wheat at 11:45 o'clock A. M., on July 31, 1929, was $1.41½ per bushel." The plaintiff in his complaint sets forth that the difference in the price of the said wheat was 27¼ cents per bushel, and, on account of said transaction, there is now due from the defendant $1,362.50 with interest, for which amount plaintiff asks judgment.

Defendant answered, denying the allegations of plaintiff's complaint; and further, by way of counterclaim, alleged that it bought said grain for plaintiff on May 6, 1929, but that under the rules and regulations of such transactions, known and agreed to by the plaintiff, this grain was later sold, on May 17, 1929, at a loss of $438.03, for which defendant prayed judgment, and the dismissal of plaintiff's cause of action.

The action was tried to a jury, who returned a verdict for the plaintiff, to which defendant excepted and moved for a judgment notwithstanding the verdict, which motion was overruled, and a judgment entered for the plaintiff.

The appellant in its appeal from the judgment and order overruling its motion for new trial sets forth and alleges ten assignments of error. The first eight deal with the court's denying defendant's motion for a directed verdict, for judgment notwithstanding the verdict, for a new trial; and the court's sustaining plaintiff's objection to the asking of certain questions of witnesses, and the admission of certain testimony. We have carefully examined the record relating to all of the above assignments of error and the grounds upon which they are predicated, and are of the opinion that no prejudicial error was committed.

Appellant's assignments 9 and 10 deal with the sufficiency of the evidence to support the allegations of the action and the sufficiency of the evidence to show damages in the amount of the verdict. We have carefully examined the evidence as set forth in appellant's brief and the additional matter contained in respondent's brief. It would appear from the evidence that the appellant had acted as the broker for the respondent in several previous transactions. It was the respondent's practice, as shown by his testimony, to give the appellant open orders, and later on, if there was any loss, to reimburse the company by check; that the appellant on three or four previous occasions executed orders for the respondent without asking for margins or cash; and the appellant had never previously sold him out for failure to put up the margin. There is no dispute that on May 6, 1929, the Updike Grain Company purchased for Thomas, at Thomas' order, 5,000 bushels of July wheat at $1.14¼ a bushel. At the time of leaving this order, the respondent left no money as margins for the appellant company, nor was he at the time asked to leave margins to protect his purchase. It was his practice with the appellant company that, when a loss was sustained, he would send them a check to cover such loss. Soon after this particular transaction, respondent was out of the state on business, but, before leaving, he instructed his wife, who took care of his business when he was away, that, if the Updike Grain Company called for margins, she was to send them a

check. The appellant company contends that it attempted to get in touch with the respondent to ask him to place margins, but they did not talk to the respondent's wife as he had said they might in regard to this matter. The respondent contends that no requests for margins ever reached him. There is no dispute that on July 31, 1929, Thomas directed the appellant to make a sale of this wheat at 11:45 a. m., that at that time the market was $1.39¼ a bushel, and that the increase from $1.14¼ to $1.39¼ per bushel (less commission) represented a total of $1,237.50, which, with interest to the date of the verdict herein, amounted to $1,307.50. Appellant concedes that the respondent executed the above order to sell, but claims that on May 17, 1929, it sold "short" in behalf of Thomas, 5,000 bushels of July wheat at $1.05¾ a bushel, and that, as a result of this transaction, it is not indebted to Thomas for the profit on the wheat purchased on May 6, 1929, but that, on the contrary, Thomas sustained a net loss of $438.03, which is due the appellant from the respondent. Appellant justifies the selling "short" of the respondent, in that he had never advanced any margins to the company, and the appellant felt that respondent would not want to keep the wheat with the market on a steady decline, and that the sale was meant to protect the respondent.

There is considerable evidence as to the practices of the Updike Grain Company in demanding margin from its customers on purchases, and particularly the custom with regard to purchases of respondent Thomas. The respondent's testimony was to the effect that it was the appellant's custom to extend to him credit on the making of such purchases, and that, on previous occasions, no margins had been demanded and full credit had been extended to the respondent. In this he is supported by the Chicago manager of the appellant company, who testified: "I have known Mr. Thomas approximately three years and have had considerable number of transactions with him with reference to buying and selling grain. * * * We consider his credit fairly good. * * * Mr. Thomas made no deposit with us or any payment in connection with the purchase for this grain. We didn't feel we necessarily had to have the money in advance before executing the order for him. We felt he would always make good, and on small accounts, we thought we could afford to execute the orders and buy grains for his account without having the money in advance."

Upon the question of the appellant company extending credit to the respondent, the court instructed the jury as follows: "In this case, gentlemen, the issue for you to decide is very simple. In considering this case you must first proceed to determine whether or not at the time of the alleged transaction on May 17th, 1929, the credit of the plaintiff Thomas was exhausted with the Updike Grain Co. and whether or not upon that date the Updike Grain Co. closed out the transaction of the plaintiff on the Board of Trade. If you find that on that date the plaintiff's credit with the Updike Grain Co. was exhausted and the defendant Grain Co. did close out the transaction of the plaintiff Thomas on the Board of Trade, then your verdict should be for the defendant in the sum asked for. If, on the other hand, gentlemen, you find that the plaintiff's credit was not exhausted with the Updike Grain Co. on the 17th of May, 1929, or that the Updike Grain Co. did not close out the original transaction on that date, as they allege, your verdict must then be for the plaintiff in the amount claimed by the plaintiff."

The jury found for the respondent. By that verdict, the jury must have found and believed that, at the time of the alleged transaction of May 17, 1929, the credit of the respondent Thomas was not exhausted with the appellant, grain company, and that the appellant, grain company, did not close out the original transaction on that date. We have carefully examined all of the evidence, testimony, exhibits, and depositions in this action, and we believe that there is sufficient evidence to sustain the verdict of the jury. Without the need of citation, the law is well settled in this state that this court on appeal will not disturb the verdict of the jury where there is any credible evidence or a preponderance of evidence to support such verdict.

The appellant predicates its defense to a great extent on the wording of agreement to close out because of lack of margins which is printed on each confirmation slip issued to the respondent. It reads as follows: "On all marginal business we reserve the right to close transactions when margins are about exhausted without further notice, and to settle contracts in accordance with the rules and customs of the Board of Trade or Exchange at the place of contract. It being understood and agreed in all trades that actual delivery is contemplated."

Appellant contends that, "when margins are about exhausted without further notice," they could and reserved the right "to close transactions." Respondent, however, asserts and maintains that the appellant by custom to this respondent had waived the right to exact strict performance, and could not do so without demand upon him for more margin, which demand was not given to him. The New York Court of Appeals, in Rosenthal v. Brown et al, 247 N. Y. 479, 160 N. E. 921, 923, passed on matters that are very much in point to the case at bar. The court said: "In this case there was notice on the confirmation slips that all marginal business might be closed without notice, but a stipulation permitting such transactions to be closed without notice may be affected by subsequent promises, not based on actual pecuniary consideration. If the broker waives the right to exact strict performance, and gives time and indulgence to the customer, he cannot recall this waiver at his own option without giving notice to the customer, to the end that the latter may have an opportunity of protecting the account. Good faith will not permit the broker, after having once waived the right to close the account without notice upon default of payment at the prescribed time, to suddenly stop short and insist upon closing the account when the other party is not prepared to put up the margin. Strict performanc in such cases may be waived by any agreement, declaration or course of conduct on the part of the broker which leads the customer to believe that time will be given him to put up additional margin, and no new or independent consideration is required to support such a waiver." Toplitz v. Bauer, 161 N. Y. 325, 333, 55 N. E. 1059."

In the instant case, it would appear that the appellant company by the "course of conduct on the part of the broker" had waived the right to close out the respondent until demand had been made upon him for margin.

"To justify a broker in closing out the transaction on depletion of the margins, it is incumbent on him first to make demand of the client for further margins, and the demand must be such as will give the client a reasonable notice or time to comply therewith; and if a broker waives a default in complying with such a demand, he cannot close the transaction until a new demand has been made." 9 C. J. 547.

We have carefully examined the evidence in an effort to ascertain whether or not such a demand was ever made upon the respondent, and we have arrived at the conclusion that there is no evidence of a demand or attempted demand for margin, prior to the time of the closing out of the respondent on May 17, 1929. The nearest to a demand that was made upon the respondent was a letter of May 8, 1929, which the manager in Sioux Falls stated was mailed to Thomas at Worthing, which reads: "Been trying to get you on the phone. Presume you have mailed check. Market very nervous.                                                  "M."

Respondent testified that he never received it and saw it for the first time when produced at the trial. However, by the authority above cited, such a letter could hardly be classed as a "reasonable notice" for a demand for margin. It, at best, raised a direct question of fact as to whether or not a demand was made, and whether or not the respondent had exhausted his credit with the Updike Grain Company, which the court included in its second instruction, above set forth. The jury found not, and this court is inclined so to believe.

The judgment and order appealed from are affirmed.

POLLEY, J., concurs.

CAMPBELL, P. J., and ROBERTS, J., concur in result.

RUDOLPH, J., disqualified and not participating.